## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Case No. 1:22-cv-2449-PAB-STV

SHANA TROYER,

        Plaintiff,

v.

MARATHON PETROLEUM COMPANY, LP,

        Defendant.

---

## DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

---

Defendant Marathon Petroleum Company LP ("MPC" or "Defendant")[1] pursuant to Fed. R. Civ. P. 56, respectfully requests that the Court enter summary judgment in its favor and against Plaintiff Shana Troyer on all of the claims asserted in her Complaint [Dkt. 1].

## INTRODUCTION

Plaintiff, an experienced Human Resources ("HR") professional, resigned from her employment with MPC after a workplace investigation substantiated a complaint that she had violated MPC's Harassment and Appropriate Workplace Conduct Policy ("Harassment Policy"). Plaintiff's claim for sex discrimination fails as a matter of law because she cannot establish a *prima facie* case or produce evidence of pretext. Her claim for violation for Colorado's lawful-off duty activities statute ("LODAS") fails because her conduct was neither off-duty nor legal when she engaged in drunken and harassing behavior towards co-workers. Even if she was,

---

[1] The proper named Defendant is Marathon Petroleum Logistics Services LLC ("MPLS"), which is a subsidiary of Marathon Petroleum Company, LP.

statutory exceptions permitted MPC to terminate Plaintiff's employment for conduct that was

contrary to her bona fide job duties and created a conflict of interest.  Accordingly, the Court

should grant summary judgment in MPC's favor.

## STATEMENT OF UNDISPUTED FACTS[2]

**A.    Plaintiff's HR Job Required Her to Maintain Professionalism.**

1.      Plaintiff is a woman.  [Dkt. 23] at §(4)(1).

2.      On September 3, 2019, Plaintiff started working for MPC as HR Consultant

supporting MPC's Gathering and Processing ("G&P") business unit in the West Region.  *Id.* at

§(4)(4).  In October 2020, Plaintiff was promoted to the position of HR Supervisor. *Id.* at §(4)(5).

3.      As HR Supervisor, Plaintiff provided comprehensive HR support to leaders,

conducted investigations, and assisted with various staffing issues in the G&P business unit.  She

was responsible for advising employees on MPC's workplace policies, including its Harassment

Policy.  She also supervised Human Resources Business Partners ("HRBPs"), Colleen Redfearn

and Ms. K.  Ex. A at 111:18-22, 112:7-15; 120:24-121:11.

4.      Plaintiff admits that maintaining professionalism is critical to any HR role,

including her HR Supervisor role. Ex. A at 110:24-111:4, 112:16-19. As a member of HR, she

must be careful regarding her behavior.  *Id.* at 257:1-6.

5.      Plaintiff admits that it is particularly important that representatives of HR follow

company workplace policies and model good behavior for other employees.  *Id.* at 107:1-19.

6.      In 2021, Plaintiff started reporting directly to HR Director Jaime De La Cruz.  Ex.

---

[2] The numbered paragraphs in this Section are referenced herein as "SOF __."

A at 116:19-117:13, 144:6-14.  Mr. De La Cruz was responsible for evaluating Plaintiff's performance and issuing discipline. Ex. B at 44:24-45:3, 176:13-177:1.

**B.      Plaintiff Got Drunk and Inappropriate at Leadership Team Conferences.**

7.      In the spring of 2021, G&P Vice President Mr. C,[3] Learning & Development Supervisor Mr. S,[4] and Plaintiff planned three in-person leadership team conferences for the G&P West Region to get to know each other, build trust, and set clear expectations for how the extended leadership teams would work together.  Ex. A at 140:14-142:10.

8.      The conferences occurred in Oklahoma City (March 29-31), Midland, Texas (May 4-6) and Denver, Colorado (June 15-17).  [Dkt. 1 ¶ 45]; Ex. E at 281.  The agenda for all three conferences was the same with each conference lasting a day and half and a mandatory team dinner following the first full day.  Ex. A at 188:7-12; Ex. F.

9.      Plaintiff attended all three conferences as the G&P business unit's primary HR contact. Ex. A at 140:14-17.

10.      After attending meetings on May 4, 2021 in Midland, Plaintiff went out with individuals she identified as the "Core Group": Mr. C, Mr. S, Regional Manager for Maintenance Joe Sweitzer, Health & Safety Manager Ms. G, Process Safety Director Mr. W, Environmental Manager Robert McHale, and Director Tim Price.  [Dkt. 1 ¶ 43]; Ex. A at 198:13-199:4.

---

[3] MPC has used only last initials to refer to certain current employees in order to protect their privacy.
[4] During her deposition, Plaintiff claimed that Mr. S might be part of the HR department.  Ex. A at 312:17-24.    Mr. S is an Adv. Sr. Org. Development Consultant and reports to Director of Performance, Learning and Organizational Development Anna LeBlanc. He is not in Mr. De La Cruz's direct reporting line.  Ex. C at 1976; Ex. D.

11.    Plaintiff and the Core Group consumed "a lot of" alcoholic drinks that evening. Ex. A at 202:23-203:6.  Plaintiff admits "foul language" was used. *Id.* at 222:4-9.

12.    The next morning, Plaintiff presented at the conference.  *Id.* at 207:18-22.

13.    While Plaintiff lives locally, she stayed at the same hotel as the out-of-town attendees during the Denver leadership conference.  *Id.* at 193:16-195:3.[5]  Mr. De La Cruz approved the expense because it was a work-related event.  Ex. B at 197:6-22.

14.    On June 16, 2021, after the second day of the Denver leadership conference, Plaintiff met Ms. G, Mr. Sweitzer, and Mr. W for dinner. Ex. A at 217:7-12.  After dinner, they went to The Roosevelt bar.  *Id.* at 218:4-8, 219:12-14.

15.    That evening, Ms. K received a text message from Area Manager Nate Lloyd informing her that her boss, Plaintiff, and his boss, Mr. Sweitzer, were taking shots at The Roosevelt.  Ex. E at 281.

16.    Mr. S and Ms. K walked to The Roosevelt. When they arrived, Plaintiff, Mr. Sweitzer, Ms. G, Mr. W, Mr. Price, and Director Kevin Thompson were sitting at a large booth. Approximately thirteen MPC employees were at the bar.  Ex. G at 442-452 (listing witnesses).

17.    Plaintiff now admits that at The Roosevelt she drank alcohol, told off-color jokes, used profanity, and cheered the word "pussy." [Dkt. 1 ¶¶ 85, 87-90].

**C.    Plaintiff's Direct Report Files Complaint and An Investigation is Initiated.**

18.    On June 23, 2021, Ms. K filed a complaint with Mr. De La Cruz alleging Plaintiff had engaged in inappropriate and harassing behavior at the leadership conferences in Midland

---

[5] Even though the agenda ended at 12:30 pm on June 16, 2021, Plaintiff stayed in the Westin at MPC's expense through June 17, 2021. *Id.*

and Denver.  Ex. E at 281; Ex. B at 163:15-21.

19.    Mr. De La Cruz asked HR Compliance Supervisor Jeff Steigauf to investigate the

complaint against Plaintiff because the HR Compliance Department does not sit within Mr. De

La Cruz's  arm of the HR department and Mr. De La Cruz did not want anyone from the HR

Department investigating an employee in his direct reporting line.  Ex. B at 104:20-105:4.

20.    Ms. K reported to Mr. Steigauf that when she arrived at The Roosevelt, Plaintiff

ordered her a double shot of tequila.  When the shot arrived and Ms. K refused to take it, Plaintiff

told her to "suck my dick." Ex. E at 282.  Plaintiff then stood up, pointed at Ms. K, and told the

booth she was "[her] boss." *Id.*  Plaintiff also kept using the phrase "suck a bag of dicks." *Id*.

Ms. K reported that when Mr. Sweitzer noticed that several employees, including Mr. C, had left

the bar, he said, "What a bunch of a vaginas."  Plaintiff responded that "it's not vaginas, its

pussy." *Id.*  Plaintiff and Ms. G then yelled the word "pussy" repeatedly.  *Id.* When Mr. Sweitzer

made a hand gesture depicting a vagina, Plaintiff said "You must not know your way around a

vagina if you think it looks like that."  *Id.*  Plaintiff and Ms. G called Mr. Sweitzer "Big Dick

Joe" and "Big Dick Daddy Joe."  *Id.*

21.    Ms. K indicated that working relationships had been compromised as a result of

Plaintiff's behavior. Ex. E at 282.

22.    After meeting with Ms. K, Mr. Steigauf identified the initial subjects of the

investigation as Plaintiff, Mr. Sweitzer, Mr. C, and Ms. G and the scope as to whether they had

violated MPC's Harassment Policy or any of MPC's expectations for leaders. Ex. H at 86:1-12,

113:7-16; Ex. G at 441-442.

23.    MPC's Harassment Policy prohibits all forms of harassment including insulting,

intimidating or discourteous conduct, derogatory jokes or comments that create an intimidating,

hostile or offensive work environment. "The prohibition against harassment extends to work-

related situations involving interactions between or among employees, vendors, contractors, and

customers, which occur on or off company property or during or after regular work hours,

including off-site meetings, business travel, and social events." Ex. I at 220.

24.     Plaintiff's other direct report, Ms. Redfearn, was at the conference in Midland and

reported to Mr. Steigauf that Plaintiff had acted inappropriately. Specifically, she reported that

Plaintiff was hungover the morning she presented in Midland. Ms. Redfearn no longer wanted to

be a part of Plaintiff's team and reported that HR has no credibility as a result of Plaintiff's

behavior. Ex. J at 286.

25.     During Plaintiff's June 25, 2021 witness interview, Mr. Steigauf admonished her

to fully cooperate and provide truthful and complete responses and to maintain confidentiality.

Ex. K at 308-311. Plaintiff understood the significance and importance of these admonishments.

Ex. A at 249:2-251:9.

26.     In her interview, Plaintiff admitted that some off-color jokes were made in

Midland but largely denied engaging in inappropriate conduct. Ex. K at 310. She told Mr.

Steigauf, "I am shocked. I work in HR and I am very careful." *Id*. at 311.

27.     Plaintiff denied being hungover on the morning she presented in Midland. Ex. K

at 309. She denied using the phrase "suck a bag of dicks." *Id*. As to the evening of June 16,

2021 at The Roosevelt, Plaintiff claimed "I was not intoxicated. Not at all." *Id.* She denied

making additional comments, including "suck my dick," "pussy,"[6] discussing female anatomy,

---

[6] She told Mr. Steigauf she would never shout the word "pussy." *Id.*

and referring to Mr. Sweitzer as "Big Dick Joe." *Id*. at 309-311.

28.    Plaintiff claimed someone - she could not recall who - asked her if "the carpet matched the drapes," referring to the color of her pubic hair.  Ex. K at 310.  Plaintiff noted she didn't think much of the comment at the time. *Id*.

29.    Plaintiff understood that she could provide additional information. Later that evening, Plaintiff sent Mr. Steigauf a follow up email alleging that she and Mr. Sweitzer were being targeted by Ms. K because Ms. K was jealous that Plaintiff had been promoted to the HR Supervisor position and that Plaintiff and Mr. Sweitzer had improved their relationship recently. Ex. L at 303-304; Ex. A at 259:5-16.

30.    Between June 24 and June 28, 2021, Mr. Steigauf interviewed 14 witnesses, including Plaintiff.  Ex. G at 441.

31.    By June 28, 2021, several employees, including Mr. Thompson, Mr. Lloyd, and Mr. Bolton, corroborated Ms. K's allegations regarding Plaintiff:

    a.    Mr. Thompson heard Plaintiff pressuring others to take shots and making comments like "C'mon, don't be pussies - drink up."  When the group started to discuss work, Plaintiff claimed to be tired of the conversation and left the booth to go to the bathroom.  When she returned, Plaintiff crawled over the top of the booth and seemed heavily intoxicated. Plaintiff used the word "pussy" a lot and told Mr. Sweitzer that he didn't know his way around a vagina.  Finally, Mr. Thompson repeatedly heard Plaintiff call Mr. Sweitzer "Big Dick Joe."  He left the booth because he was "embarrassed" that members of MPC's safety and support groups were making "vulgar" comments that he was "uncomfortable with."  Ex. M.

b.  Mr. Lloyd felt pressured to drink shots, heard Plaintiff say the word "pussy" several times, and heard her call Mr. Sweitzer "Big Dick Joe."  He felt very uncomfortable and thought it was inappropriate for leaders to act that way.  Ex. N.

c.  Mr. Bolton heard Plaintiff say "what a bunch of pussies" when employees refused to drink shots.  He also heard her call Mr. Sweitzer "Big Dick Joe."  He thought the language was inappropriate.  Ex. O.

32.    On July 7, 2021, Mr. Steigauf drafted a report largely substantiating the allegations against Plaintiff.  Ex. P at 339.  He did not believe Plaintiff was truthful in the investigation.  Ex. A at 299:2-4.

33.    On July 8, 2021, Mr. De La Cruz suspended Plaintiff because the investigation had substantiated many of the allegations that Plaintiff had violated the Harassment Policy.  Ex. B at 205:10-21. Ex. Q at 365.

34.    In response to Mr. De La Cruz suspending her, Plaintiff alleged that Mr. S had been the one to ask her if the carpet matched the drapes and claimed that Ms. K said she did not want to date anyone who was "fresh off the boat."  Ex. H at 125:23-126:4; Ex. G at 446.  Mr. De La Cruz informed Plaintiff that Mr. Steigauf would contact her to re-interview her about these new allegations.  Ex. R at 1251.

35.    Later that morning, Mr. Steigauf reinterviewed Plaintiff.  As a result of the conversation, he expanded the investigation to include Plaintiff's allegations against Mr. S and Ms. K.  Ex. G at 446.

36.    On July 14, 2021, Mr. Steigauf reinterviewed Mr. S and Ms. K.  *Id.*  Mr. Steigauf did not substantiate Plaintiff's allegations and drafted a new report adding his conclusions that

Mr. S and Ms. K did not violate the Harassment Policy.  Ex. H86:17-87:2, 94:6-14; 443-445,

455; Ex. S at 390.

**D.    Plaintiff Resigns in Lieu of Termination and Other Leaders are Disciplined.**

37.    Based on the report and updated report from Mr. Steigauf, on July 22, 2021,

Mr. De La Cruz decided to terminate Plaintiff's employment for violating MPC's Harassment

Policy. Ex. B at 205:4-21.  Plaintiff was permitted to resign in lieu of termination.  Ex. A at

324:16-325:5.

38.    Over the course of the investigation, Mr. Steigauf provided updates to the

decisionmakers for the subjects - Mr. De La Cruz , who was the decision-maker for Plaintiff;

Chief Operating Officer Greg Floerke and Vice President Jonathan Jackson, who were the

decision makers for Mr. C and Mr. Sweitzer, and Mr. Floerke and Vice President Harold

Rhinehart, who were the decision makers for Ms. G.  Ex. H at 104:7-105:2; Ex. B at 224:2-9; Ex.

T at p. 6.

39.    Mr. Floerke and Mr. Jackson had additional questions about their direct reports'

conduct at the Midland and Denver conferences.  Ex. H at 104:7-105:2. In response, Mr. Steigauf

conducted additional interviews with Mr. C and Ms. G.  Exs. U-X; Ex. Y at 435.  He also

reviewed multiple email statements from Mr. Sweitzer.[7]

40.    On July 28, 2021, Mr. Steigauf finalized the Final Investigation Report that also

---

[7] On July 22, 2021, Mr. Sweitzer emailed Mr. Steigauf and corroborated allegations that Plaintiff
and Ms. G had engaged in inappropriate conduct at the conferences and claimed he had felt
pressure to join because he was afraid of retaliation at performance review time and he was
"trying to build a strong relationship with HR and Safety by getting [Ms. G] and [Plaintiff] to
like [him]."  Ex. Z.  Mr. Sweitzer also advocated that Plaintiff and others "ACTUALLY said
way worse things/off-color comments then what" he was being accused of saying.  Ex. AA at
461 (emphasis in the original).

addressed the decisionmakers' follow up questions regarding Mr. Sweitzer, Mr. C, and Ms. G.
Ex. G; Ex. BB; Ex. P; Ex. H at 104:7-17.

41.    Mr. Floerke and Mr. Jackson terminated Mr. Sweitzer's employment because he
had pressured a direct report to consume alcohol and violated the Harassment Policy.  Ex. T at p.
6.  Mr. Sweitzer is male.  Ex. A at 85:22-23.

42.    Mr. Floerke and Mr. Rhinehart suspended Ms. G and issued her a written warning
because she violated MPC's Harassment Policy.  Ex. T at p. 6; Ex. CC at 467; Ex. B at 288:24-
289:5.

43.    Mr. Floerke and Mr. Jackson issued Mr. C a written reprimand because he had
demonstrated a lack of leadership when he failed to stop the harassing and inappropriate conduct
in Midland and Denver.  *Id*.; Ex. DD at 497; Ex. B at 289:6-14.

44.    While Mr. De La Cruz discussed the investigation with Mr. Floerke, Mr. Jackson,
and Mr. Rhinehart and made recommendations to them based on his role as HR Director, he was
not a decisionmaker for Mr. Sweitzer, Mr. C, or Ms. G because none worked in the HR
Department nor reported to him.[8]  Ex. B at 227:6-23.

**E.    Third-Party Discovery Further Corroborates the Results of the Investigation**

47.    On the morning of May 5, 2021, Plaintiff texted Ms. G, "I have one thing to say
to you.  Eat. A. Bag. Of. Dicks.  Holy shit I'm hurting."  She continued "I haven't been this
hungover in years." Ex. EE at 1218.

48.    On June 15, 2021, Plaintiff texted Ms. G, "Apparently Rob has never heard 'suck

---

[8] In fact, his recommendations to fire Mr. C and Ms. G were not followed by the decision-
makers. Ex. B 289:15-290:10.

a bag of dicks.'  He laughed until he snorted and had tears."   Ex. FF at 1223.

49.    On the evening of June 16, 2021, Mr. S texted Plaintiff and asked "Where y'all

at."  Plaintiff responded: "Roosevelt by front porch. Drunk and inappropriate. Come."  Ex. GG.

**F.    No Evidence of Discrimination**.

50.    In her deposition, Plaintiff testified that she had no reason to challenge that the

information contained in the Final Investigation Report is what the witnesses relayed or the

accuracy of any of the witness interview summaries.  Ex. A at 290:20-291:1.

51.    Plaintiff believes that Ms. K was jealous of her promotion (SOF 29) and that Mr.

Bolton had a motive to lie because they had a "contentious relationship."  Ex. A at 258:10-22.

She does not have any reason to believe that the other witnesses lied and could not identify any

witness as having an anti-female bias.[9]  *Id*. at 293:18-294:4.

52.    Plaintiff testified that Mr. Steigauf appears to have followed standard HR

protocols and procedures for investigations. Ex. A 299:9-19.

53.    Plaintiff admitted she has no evidence that Mr. Steigauf or Mr. De La Cruz has

any bias against women. Neither made any sexist comments to her. Ex. A at 321:22-323:9.

54.    No HR Supervisor violated the Harassment Policy and retained their employment.

Ex. A at 307:5-16.  Nor did any HR employee receive less harsh discipline for substantially

similar behavior.  *Id.* at 312:17-21; Ex. HH at p. 3.

**STANDARD OF REVIEW**

---

[9] The only evidence Plaintiff could point to regarding any participant having bias against women
is a witness (she does not know who) allegedly making a statement to Mr. Steigauf that women
shouldn't be acting that way when describing her conduct at the bar. Ex. A at 318:20-323:9.

Summary judgment is proper when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  A dispute is "genuine" if the issue could be resolved in favor of either party.  *Farthing v. City of Shawnee*, 39 F.3d 1131, 1135 (10th Cir. 1994).  A fact is "material" if it might reasonably affect the outcome of the case.  *Id.* at 1134.

## LEGAL ARGUMENT

## THE SEX DISCRIMINATION CLAIM FAILS AS A MATTER OF LAW

To avoid summary judgment on her sex discrimination claim, Plaintiff must first demonstrate a *prima facie* case by showing: (1) she is a member of a protected class; (2) she was meeting MPC's legitimate job-performance expectations; (3) she suffered an adverse employment action; and (4) MPC treated similarly situated individuals not of her protected class more favorably. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973).  As demonstrated below, she cannot meet this burden.

**A.    Plaintiff Was Not Satisfactorily Performing Her Job.**

While the burden for establishing this factor is not high, the record demonstrates that Plaintiff was not satisfactorily performing her job duties.  The investigation substantiated allegations that Plaintiff violated the Harassment Policy.  SOF 32.  Several employees reported that Plaintiff engaged in inappropriate and harassing conduct towards and in front of the team she supported and undermined HR. SOF 20, 21, 24, 31.  She lied during an investigation. SOF 17, 26, 27, 47-49.  Because Plaintiff violated the *exact* policy she was expected to enforce and because her conduct violates the behavioral expectations of an HR Supervisor, she was not satisfactorily performing her job.

**B.  No Similarly Situated Male Comparator Was Treated More Favorably.**

Plaintiff's conclusory allegations that she was treated unfavorably fall short of the evidence required to create a logical connection between the termination of her employment and sex discrimination. *Macieyovski v. City & Cnty. of Denver*, No. 15-cv-01550-MSK-NYW, 2017 WL 897844, at *3 (D. Colo. Mar. 6, 2017) (citing *Schlecht v. Lockheed Martin Corp.*, 626 Fed. Appx. 775, 778 (10th Cir. 2015) (granting summary judgment where plaintiff failed to produce evidence to support a *prima facie* case). "The real question, it must be remembered, is whether a plaintiff has shown actions taken by the employer from which one can infer, if such actions remain unexplained, that it is ***more likely than not*** that such actions were based on a discriminatory criterion illegal under the Act." *Hysten v. Burlington N. & Santa Fe Ry. Co.,* 296 F.3d 1177, 1181 (10th Cir. 2002) (internal quotation and citation omitted) (emphasis added). In other words, it is not enough that Plaintiff's *prima facie* evidence merely could add up to sex discrimination; she must present evidence that if unexplained makes it ***more likely than not*** that she suffered sex discrimination.

To be a similarly situated, male comparator, an employee must work in the same unit or department and hold the same position. *Ibrahim v. Alliance for Sustainable Energy*, 994 F.3d 1193, 1196 (10th Cir. 2021) ("Employees are similarly situated when they share a supervisor or decision-maker, must follow the same standards, ***and*** engage in comparable conduct.") (emphasis added).  An employee must share the same immediate supervisor because "[d]ifferent supervisors will inevitably react differently" to employee misconduct.  *Kendrick v. Penske Transp. Servs., Inc.,* 220 F.3d 1220, 1233 (10th Cir. 2000).

Plaintiff cannot identify a similarly situated HR Supervisor who was subjected to more lenient discipline. SOF 54.  While Mr. Sweitzer engaged in substantially similar behavior (SOF 20,40, 41), he did not work in HR nor report to Mr. De La Cruz. SOF 10, 38.  Nonetheless, he, too, was terminated.  SOF 41. Neither Mr. C nor Mr. S engaged in substantially similar behavior. SOF 40.  Nor did they report to Mr. De La Cruz. SOF 7, 38.  Finally, Plaintiff concedes that her decision-maker, Mr. De La Cruz, never made any sexist comments to her. SOF ¶ 53. Accordingly, Plaintiff's conclusory allegations of disparate treatment are unsupported by admissible evidence. *See Annett v. Univ. of Kan.*, 371 F.3d 1233, 1237 (10th Cir. 2004) (unsupported conclusory allegations do not create a genuine issue of fact on summary judgment).

Plaintiff appears to claim that she was treated less favorably than male managers who used inappropriate language or engaged in egregious conduct. None of the alleged male comparators identified in the Complaint or during her deposition held the HR Supervisor role, worked in the HR Department, or reported to Mr. De La Cruz.  SOF 54.  In fact, Plaintiff could not identify a single HR employee that was subject to more lenient discipline in the face of similar circumstances.  *Id.*  Accordingly, there is no evidence of a similarly situated comparator.

For each of these separate reasons, Plaintiff cannot establish a *prima facie* case. The Court should grant summary judgment in favor of MPC.

## C.  MPC's Legitimate Non-Discriminatory Reason for Termination.

Even if Plaintiff could establish a *prima facie* case of discrimination - and she cannot - MPC carries its burden to articulate a legitimate nondiscriminatory reason for the adverse employment action.  Notably, this burden is one of production only, not persuasion.  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000).  Mr. De La Cruz made the decision

to terminate Plaintiff's employment because she violated the Harassment Policy.  SOF 37.

During the investigation, multiple witnesses confirmed her inappropriate conduct. SOF 20, 31.  It

is well-settled that violation of company policy is a legitimate, nondiscriminatory reason for

termination.  *See, e.g., Vaughn v. Epworth Villa*, 537 F.3d 1147, 1153-54 (10th Cir. 2008).

Accordingly, MPC has satisfied its burden.

**D.  Plaintiff Cannot Establish Pretext.**

In considering whether MPC's nondiscriminatory reason is pretextual, "[t]he relevant

inquiry is not whether the employer's proffered reasons were wise, fair or correct, but whether it

honestly believed those reasons and acted in good faith upon those beliefs."  *Rivera v. City &*

*Cnty. of Denver*, 365 F.3d 912, 924-5 (10th Cir. 2004) (citation omitted).  An employer's

business judgments viewed in hindsight may be hasty, unwise, or even mistaken, but they are not

subject to second-guessing by a court so long as they are made honestly and in good faith. *See*

*id.; Riggs v. AirTran Airways, Inc*., 497 F.3d 1108, 1118-19.

Here, there is no evidence that Mr. De La Cruz's reasoning for terminating Plaintiff's

employment is unworthy of belief.  Indeed, it was based on the findings of a thorough workplace

investigation.[10]  It is undisputed that Mr. Steigauf interviewed fourteen people and multiple

witnesses confirmed Plaintiff's inappropriate behavior and indicated that she undermined HR.

---

[10] Even an imperfect investigation "does not convert the proffered basis for the employment
decision into pretext for discrimination." *Ainsworth v. Indep. Sch. Dist. No. 3 of Tulsa Cnty.*, 232
F. App'x 765, 774 (10th Cir. 2007) (unpublished).  Here, however, Plaintiff concedes Mr.
Steigauf followed MPC's standard investigation protocols and procedures, she has no reason to
challenge the contents of the witness summaries, and that she is not aware of Mr. Steigauf having
any anti-female animus. SOF 50, 52, 53.  Moreover, the investigation's findings were further
corroborated by the contemporaneous text messages detailing drunk and inappropriate conduct,
Plaintiff's use of the obscene language at issue, and her lying about being hungover the morning
she presented. SOF 47-49. *See also* [Dkt 1 at ¶ 89 (admitting using the word "pussy").

SOF 20,31.[11]  Plaintiff concedes that maintaining professionalism was critical in her HR

Supervisor role.  SOF 4,5.  While Plaintiff may insist she could still perform her HR Supervisor

job, it is the manager's perception of her performance and his "prerogative to determine which

areas of performance were most important."  *Merritt v. Tellabs Operations, Inc.*, 222 F. App'x

679, 682 (10th Cir. 2007) (unpublished).  Thus, Mr. De La Cruz's belief that Plaintiff's conduct

made her unfit to work in the HR Department is the only opinion that matters here.  Moreover,

there is absolutely no evidence of discrimination or bias in the decision-making process.

Plaintiff's disagreement with the findings provides no basis to support a finding of a pretext.

### THE LODAS CLAIM FAILS AS A MATTER OF LAW

To prevail on this claim, Plaintiff bears the burden of proving: (1) she engaged in a

lawful activity off of MPC's premises during non-working hours; and (2) she was terminated for

engaging in that activity.  *Yarbrough v. ADT Sec. Services, Inc.*, No. 07-cv-01564, 2008 WL

3211284, at *2 (D. Colo. Aug. 6, 2008) (citing C.R.S. § 24-34-402.5).  Statutory exceptions

permit an employer's prohibition of conduct where it:

> (a) Relates to a bona fide occupational requirement or is reasonably and rationally related
> to the employment activities and responsibilities of a particular employee or a particular
> group of employees, rather than to all employees of the employer; or
> (b) Is necessary to avoid a conflict of interest with any responsibilities to the employer or
> the appearance of such a conflict of interest.

C.R.S. § 24-34-402.5(a)-(b).

As a preliminary matter, Plaintiff's conduct at The Roosevelt was neither "off-duty" nor

unrelated to her job duties because she was attending a work-related social event with co-

---

[11] Mr. Sweitzer even claimed he went along with Plaintiff's harassing behavior because she
worked in HR. SOF 39.

workers. *See Patterson-Eachus v. United Airlines, Inc.*, No. 19-CV-01375-MEH, 2020 WL

7260742, at *9 (D. Colo. Dec. 9, 2020) (referencing *Jeffers v. Denver Pub. Sch.*, No. 16-cv-

02243-CMA-MJW, 2017 WL 2001632, at *9 (D. Colo. May 11, 2017) (where the activity at

issue involved an employee calling a human resources representative a "bitch" during a

telephone call and stating "Obviously, such activity may not even qualify as off duty' since it

involved direct interaction between two employees"). Indeed, the leadership team was in Denver

for a business purpose: to get to know each other, build trust, and set clear expectations for how

they would work together. SOF 7.  MPC paid for Plaintiff's hotel room the evening of  The

Roosevelt incident even though the official agenda had ended.  SOF 13.  And the activity at issue

involves direct interaction between Plaintiff and other MPC employees.

      Even if the Court considers the gathering at The Roosevelt to be an off-duty event, the

claim still fails as a matter of law because Plaintiff's conduct was not lawful.[12]  Colorado law

prohibits both harassment by supervisors and intentional harassment in a public place that

"directs obscene language or makes an obscene gesture to or at another person."[13] C.R.S. §§ 18-

9-111; 24-34402(1)(e).  Multiple employees confirmed that Plaintiff was intoxicated and used

harassing and obscene language at the bar.  Given her own admissions of using foul language in

front of other employees, Plaintiff cannot claim her conduct was lawful.  Consequently, Plaintiff

---

[12] The statute does not define the word "lawful." Thus, courts look to its ordinary
meaning.  *Coats*, 350 P.3d at 851 (citations omitted). The plain and ordinary meaning of
"lawful" is that which is "permitted by law." *Id.* (citing *Black's Law Dictionary*, 965 (9th ed.
2009) (additional citation omitted).
[13] Obscene "means a patently offensive description of ultimate sexual acts or solicitation to
commit ultimate sexual acts, whether or not said ultimate sexual acts are normal or perverted,
actual or simulated, including masturbation, cunnilingus, fellatio, analingus, or excretory
functions." Colo. Jury Instr., Criminal F:246.

cannot meet her burden of showing she was fired for engaging in lawful conduct. *Coats v. Dish Network, LLC*, 350 P.3d 849, 851 (Colo. 2015) (dismissing LODAS claim because employee's off-duty marijuana use was unlawful under federal law).

A.     **MPC's Restriction Related to A Bona Fide Occupational Requirement That Was Reasonably and Rationally Related to Plaintiff's HR Supervisor Job.**

Even if Plaintiff's conduct were both off-duty and lawful, and it was not, employers may impose off-duty restrictions if the restrictions relate to "a bona fide occupational requirement" or are "reasonably and rationally related to the employment activities and responsibilities of a particular employee or a particular group of employees, rather than to all employees of the employer." Colo. Rev. Stat. § 24-34-402.5(1)(a). *Oransky v. Martin Marietta* is instructive. There, Oransky worked as a sales manager and her job duties required her to have frequent and direct contact with her employer's key clients, including a major oil and gas company. 400 F. Supp. 3d at 1145. One evening, Oransky attended a community forum hosted by the oil and gas company and led protestors in chants that caused the forum to be cancelled. *Id*. When her employer learned of her involvement, it became concerned that she harmed its business relationships and terminated her employment. *Id*. The court granted the employer summary judgment on the LODAS claim because her protest activities had "an inherent connection with her employment" and her business development job duties were "unique to or within the exclusive province of [a] particular group of employees." *Id*. at 1150. The court found that the statutory exception allowed employers to restrict "certain high-profile members of their staff" from engaging in "activities that would call into question their competence." *Id*. (quoting *Williams v. Rock-Tenn Servs. Inc.*, 370 P.3d 638, 643 (Colo. App. 2016)).

The same logic applies here. The decision to terminate Plaintiff's employment for engaging in harassing conduct was undoubtedly related to her employment activities, responsibilities, and occupational requirements. As an HR Supervisor, Plaintiff's job duties were unique and within a province of a particular group of employees at MPC. SOF 3-5; *Oransky*, 400 F. Supp. 3d at 1152 ("Based on the unique job responsibilities held by [plaintiff], and the particularly overt way she chose to conduct her off-duty activities, the statute does not protect her."). Indeed, Plaintiff was the primary HR point of contact for the G&P Business Unit. SOF 9. Her conduct violated the Harassment Policy and called into question not only Plaintiff's competence as an HR professional and ability to support the G&P Business Unit, but the legitimacy of the entire HR Department. SOF ¶ 24,31, 39.

In light of these facts, there is no reasonable dispute that Plaintiff's inappropriate conduct at The Roosevelt was related to her job duties as HR Supervisor. Thus, this exception is an independent reason to grant summary judgment on Plaintiff's LODAS claim.

**B.**     **Plaintiff's Actions Created a Conflict-of-Interest (or the Appearance of One).**

MPC was also entitled to fire Plaintiff for creating a conflict of interest in the HR Department. In *Ruiz v. Hope for Children, Inc.*, 352 P.3d 983 (Colo. App. 2013), the court found sufficient evidence that the employee's romantic relationship with the client presented a conflict (or the appearance of one) with the employer's interests in several respects, including the fact that "the dating relationship had the potential to damage the image and reputation of [the employer] by causing third parties to lose confidence in the reliability and professionalism of the organization, and that, in turn, could endanger the grants that fund" the employer. *Id.* at 988. The same rationale supports a conclusion that Plaintiff's conduct created a conflict of interest

between herself and MPC.  MPC has a legitimate interest in ensuring that its HR representatives are modeling professionalism and not violating the policies they are charged with enforcing. Indeed, Plaintiff provided HR support to the G&P leaders present at The Roosevelt and was responsible for providing advice and conducting investigations into alleged policy violations in their business unit.  The damage from the conflict is not hypothetical – it had the actual effect of undermining HR's authority.[14] SOF 24, 31, 39.  Thus, MPC has established its conflict-of-interest defense.

## CONCLUSION

For these reasons, MPC respectfully requests that the Court grant summary judgment in its favor, dismiss Plaintiff's claims, and grant MPC any additional relief the court determines as appropriate.

Dated: October 23, 2023

*s/ Laurie J. Rust*
LITTLER MENDELSON, P.C.
Laurie J. Rust
Virginia L. Woodfork
1900 Sixteenth Street, Suite 800
Denver, CO  80202
Telephone: (303) 629-6200
Facsimile: (303) 629-0200
Email:    lrust@littler.com
              vwoodfork@littler.com

*Attorneys for Defendant*

---

[14] Mr. Sweitzer even argued that he engaged in inappropriate behavior in order to curry favor with Plaintiff and avoid retaliation at performance review time.  SOF 39.  While this does not justify or excuse his actions, it underscores the conflict-of-interest Plaintiff's conduct created.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 23rd day of October, 2023, I electronically filed the foregoing **DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

Spencer J. Kontnik
Matthew Fenicle
KONTNIK | COHEN, LLC
201 Steele Street, Suite 210
Denver, Colorado 80206
Telephone: (720) 449-8448
E-Mail: skontnik@kontnikcohen.com
E-Mail: mfenicle@kontnikcohen.com

*Attorneys for Plaintiff*

*/s/ Valerie Gremillion*
Valerie Gremillion