IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Case No. 1:22-cv-2449-PAB-STV

SHANA TROYER,

    Plaintiff,

v.

MARATHON PETROLEUM COMPANY LP,

    Defendant.

### DEFENDANT'S SUBMISSION OF ATTORNEYS' FEES
### ACCORDING TO NOVEMBER 16, 2023 ORDER

Defendant Marathon Petroleum Company LP ("MPC" or "Defendant")[1] hereby submits its calculation of reasonable attorneys' fees, with supporting documentation, according to the Court's November 16, 2023 order [Dkt. 63] and states as follows:

**CONFERRAL**

Pursuant to the Court's November 16, 2023 Order, undersigned counsel conferred with counsel for Plaintiff regarding a proposed percent reduction of fees to be awarded where MPC did not receive all of the relief requested. MPC proposed that, since virtually all of the work performed was required regardless of the specific remedy requested, the Court should award 90% of its reasonable attorneys' fees. Counsel for Plaintiff declined to propose a percent

---

[1] The proper named Defendant is Marathon Petroleum Logistics Services LLC ("MPLS"), which is a subsidiary of Marathon Petroleum Company LP.

1

reduction for MPC's partial success.  Ex. A, Nov. 28-30, 2023 Emails re Conferral on Fee Submission.

## I. BACKGROUND

1. In its November 16, 2023 Order [Dkt. 63], the Court recognized this as a "fairly egregious" case of spoliation. Nov. 16, 2023, Hearing Transcript 4:23.

2. The Court granted in part MPC's Motion for Sanctions ("Motion") and awarded attorneys' fees.  In doing so, the Court ordered MPC to submit its calculation of reasonable attorneys' fees and costs, with supporting documentation, incurred in bringing the Motion.  The Court further ordered the parties to confer on the proper apportionment of attorneys' fees in light of the fact that MPC was not granted an adverse inference or witness preclusion.

3. MPC's attorneys' fees incurred in bringing the Motion—including efforts to obtain spoliated messages in the first place, briefing, the hearing, and this submission—total $31,325.40.   Decl. of Virginia L. Woodfork ("Woodfork Decl.") ¶¶ 8, 13.

4. As further detailed below and in the accompanying invoices, MPC's fees can be divided into four phases, as follows:

    a. Investigation, attempts to obtain spoliated text messages, and conferrals: 36.80 hours and $10,921.20.

    b. Drafting Motion, reviewing Opposition, and drafting Reply brief: 38.6 hours and $13,866.90.

    c. Hearing preparation and attending: 9.6 hours and $3,275.10.

    d. Fee submission: 9.90 hours and $3,262.20.

*Id.* at ¶13.

5. The fees were calculated and billed on an hourly basis. This matter is subject to a confidential alternate fee arrangement, resulting in significantly discounted hourly rates. *Id.* at ¶ 8.

6. The attorneys working on this matter are Laurie J. Rust, a Shareholder and Virginia L. Woodfork, an Associate. Both practice exclusively employment law. Counsel is working at significantly discounted hourly rates. Ms. Rust's reduced hourly rate on this case is $356 and Ms. Woodfork's is $299. (Their standard hourly rates for 2023 are $690 and $570, respectively.). Additionally, the paralegal working on this matter is David Meyer. Mr. Meyer's reduced hourly rate on this case is $207. (His standard hourly rate for 2023 is $315). *Id.* at ¶ 9. Associate Nicholas Hankins assisted with research and attended the hearing, but did not bill MPC for his time.

7. Ms. Rust graduated from the University of Colorado *summa cum laude* in 2001 and from the University of Colorado School of Law in 2006, where she received numerous scholarships, was the Class President, and served as an Associate Editor of Law Review. Upon graduation, she began her career at f/k/a Holme Roberts & Owen; in 2011, she moved to Gordon & Rees in 2011 where was elevated to partner in 2015. She has worked at Littler as a Shareholder since 2018. She has been recognized by Chambers USA (2022, 2023) and Rising Stars (2012-2019)/Super Lawyers (2021-2023). In 2008, Law Week Colorado named her an up-and-coming lawyer. Ms. Rust is a frequent speaker on employment law topics and has served as an expert witness.

8. Ms. Woodfork graduated from the University of Denver *magna cum laude* in 2010 and from Washington University in St. Louis School of Law in 2015, where she received

3

numerous scholarships, was a Danforth Fellow, and was President of the Black Law Student Association.  Upon graduation, she began her career at Thompson Coburn LLP where she was named 30 under 30 by the St. Louis Business Journal and was recognized as being an instrumental part of a trial team that secured the largest defense win in the state of Missouri in 2016; in 2018, Ms. Woodfork moved to Constangy Brooks Smith & Prophete where she second-chaired several trials involving claims of discrimination and retaliation.  Ms. Woodfork has worked as a Senior Associate at Littler since 2022.  Best Lawyers in America named her as One to Watch in 2023 and 2024.

9. A precise calculation of the fees is set forth in the attached Declaration of Virginia L. Woodfork. Ms. Woodfork's declaration also includes redacted copies of Littler Mendelson, P.C.'s invoices attached hereto as Exhibit B. *Id.* at ¶ 13 & Ex. B.

10. MPC does not seek any costs regarding the Motion. *Id.* at ¶ 12.

## II. MPC'S ATTORNEYS' FEES SHOULD BE SUBJECT TO MINIMAL REDUCTION

In the context of Title VII, the fee award of a prevailing party is not generally reduced where the plaintiff did not prevail on an interrelated claim. *Hensley v. Eckerhart*, 461 U.S. 424, 440 40 (1983).   If "a plaintiff presents multiple related claims, 'failure on some claims should not preclude full recovery [of attorney's fees] if [the] plaintiff achieves success on a significant, interrelated claim.'" *Jane L. v. Bangerter*, 61 F.3d 1505, 1512 (10th Cir. 1995). Indeed, "[w]here a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised." *Hensley*, 461 U.S. at 440*. See also Flitton v. Primary Residential Mortg., Inc*., 614 F.3d 1173,

4

1177 (10th Cir. 2010) ("[C]laims are related if they are based on a common core of facts or are based on related legal theories.")

The same logic applies here as all the work investigating and conferring with Plaintiff's counsel regarding the destruction of evidence, and most of the work drafting the Motion for Sanctions was necessary regardless of the relief requested and granted. While MPC did not receive all of the sanctions it sought,[2] this does not justify a significant reduction in its fee award. Indeed, MPC spent significant time investigating Plaintiff's actions, attempting to recover destroyed evidence, and trying to understand when Plaintiff's duty to preserve evidence was triggered. This work would have been completed regardless of whether MPC was granted an adverse inference and the preclusion of certain witnesses. Moreover, the purpose of spoliation sanctions are to punish the wrongful behavior, deter future bad acts, and level the playing field. Given the substantial spoliation in which Plaintiff engaged, and her obfuscation throughout discovery, a significant fee award is appropriate to serve these purposes.[3] Nonetheless, MPC recognizes that limited work was done specifically on the issue of bad faith and submits that a reduction of no more than 10% of its fees is reasonable.

---

[2] MPC requested (1) an adverse inference that the missing messages would be harmful to Plaintiff's case; (2) an order prohibiting Mr. Sweitzer, Mr. S, Mr. W, or Mr. Rodriguez from testifying for Plaintiff on summary judgment or at trial; (3) an award of attorneys' fees and costs incurred in bringing this motion; and (4) any other relief the Court deems just and proper. [Dkt. 53]; Ex. C, Oct. 17-23, 2023 Email Conferral Thread re Motions for Sanctions.

[3] During the November 16, 2023 hearing, the Court noted there was "clear spoliation" of "relevant" evidence that prejudiced Defendant. Nov. 16, 2023, Hearing Transcript 19:11-16. Indeed, the Court stated this was a unique case of Plaintiff "affirmatively going in and affirmatively erasing data," which ultimately made it a close call and sanctions appropriate. *Id.* 34:13-15.

### III.  MPC'S ATTORNEYS' FEES ARE REASONABLE

Colorado courts have outlined the considerations for fee awards. *E.g.*, *Pandeosingh v. Am. Medical Response, Inc.*, No. 14-CV-01792-PAB-KMT, 2015 WL 1476446, at *2 (D. Colo. Mar. 27, 2015). The starting point is the number of hours reasonably expended multiplied by a reasonable hourly rate, which will result in what is commonly called the loadstar calculation. *Id.* (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). "This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services" and fee claimants are "entitled to the presumption that this lodestar amount reflects a 'reasonable' fee." *Id.* (citations omitted). A reasonable fee is determined by first calculating the lodestar and then adjusting it up or down as appropriate. *E.g.*, *Case v. Unified Sch. Dist. No. 223*, 157 F.3d 1243, 1249 (10th Cir. 1998). The determination of fees should not result in a second major litigation. *Fox v. Vice*, 563 U.S. 826, 838 (2011). The goal is to do "rough justice, not to achieve auditing perfection. So trial courts may take into account their overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Id.*

MPC has the burden of "proving hours to the district court by submitting meticulous, contemporaneous time records that reveal, for each lawyer for whom fees are sought, all hours for which compensation is requested and how those hours were allotted to specific tasks." *Case*, 157 F.3d at 1250. Here, the Court need not make any estimates: MPC provided detailed time records showing the amounts actually billed for work related to the Motion. The time records incorporate billing judgment and discretion, Woodfork Decl. ¶ 11, and MPC has carried its burden to establish entitlement to the fees it seeks.

As described below and reflected in MPC's invoices, Plaintiff's destruction of text messages and her iPhone and failure to even identify the spoliated text messages raised several discrete issues that MPC was required to investigate and brief under the applicable substantive and procedural standards, plus related communications with opposing counsel regarding efforts to recover the deleted text messages. *See* [Dkt. 53, pp. 5-9].

The first phase of MPC's fees was its effort to obtain the spoliated messages through discovery. In May 2023, MPC's counsel analyzed Plaintiff's responses to discovery, drafted and sent deficiency letters, and conferred with opposing counsel regarding Plaintiff's deficient discovery. Ex. D, May 2-5, 2023 Conferral Email Thread re Rule 37 Conferral re Plaintiff's Responses to Discovery; Ex. E, May 8-23, 2023 Conferral Email Thread re Missing Text Messages, Emails and Communications. As reflected in Ms. Woodfork's Declaration, counsel exercised billing discretion and has not sought recovery for communications with MPC regarding the spoliation.

In response to Plaintiff's position that she was not required to identify the deleted evidence – notwithstanding a clear instruction to do so – counsel for MPC began analyzing the propriety of Plaintiff's positions with regards to written discovery.

After it appeared that Plaintiff had not identified all missing text messages,[4] Ms. Rust directed paralegal Mr. Meyer to prepare an Excel chart of all text messages referenced throughout the parties' document productions, but not produced or otherwise identified by Plaintiff. Mr. Meyer spent 6.3 hours, at his lower rate, sifting through supplemental discovery responses and thousands of documents produced in discovery to properly identify and log

---

[4] Indeed, she had identified only a single text message thread with a group of MPC employees.

7

missing text communications. Ms. Rust then reviewed the chart, which revealed that Plaintiff had referenced exchanging text communications with at least six different witnesses. None of these had been disclosed.

Ms. Woodfork met with counsel for MPC in the case brought by Mr. Sweitzer, reviewed messages he produced with Plaintiff, and reviewed portions of his deposition regarding his preservation of some messages and failure to preserve others. She also attempted to obtain the missing messages from third parties. As reflected in Ms. Woodfork's Declaration, counsel exercised billing discretion and has not sought recovery for most of these communications.

Ms. Woodfork then drafted a second set of written discovery to Plaintiff, consisting of a single request to produce her cell phone records or execute a release of records for cell phone records. On July 21, 2023, Plaintiff objected and, despite significant conferral, refused to produce the records until September 7, 2023, which was after Plaintiff's deposition and only five days before the close of discovery. Ex. F, July 25-28, 2023 Email Conferral Thread re Sweitzer Communications; Ex. G, Aug. 9, 2023 Conferral Email re Spoliation Stipulation.

Indeed, at every step, Plaintiff unnecessarily increased costs. Once the Verizon records were obtained, Ms. Rust directed her legal assistant to cross reference the numbers with the phone numbers of witnesses in this case[5] and Ms. Woodfork analyzed the records to determine when Plaintiff first contacted counsel.

Ms. Woodfork researched and conferred with both personnel from the Verizon store and Littler's in-house e-discovery team regarding the functionality of the iCloud, options for settings, and possible means to obtain the spoliated messages.

---

[5] The legal assistant did not bill her time.

In preparing for Plaintiff's deposition, Ms. Rust specifically used the knowledge learned regarding iPhone functionality and the Chart to craft and ask deposition questions regarding spoliation. Indeed, Ms. Rust spent nearly an hour questioning Plaintiff about the spoliated messages and her obligation to preserve evidence.

Counsel for MPC continued to follow up with Plaintiff and analyze additional documents that were produced throughout September 2023. After Plaintiff's deposition, undersigned counsel continued to seek the cell phone records.

When it became apparent that neither Plaintiff nor Mr. Sweitzer possessed any additional text messages, MPC turned to its sanctions motion.

The second phase of MPC's fees is the Motion itself and the ensuing Reply brief. Counsel for MPC recognized that this is an extraordinary motion brought under unusual circumstances, and therefore both the Motion and reply reasonably reflect the careful consideration and time required to research, draft, and support the Motion. As reflected in Ms. Woodfork's Declaration, counsel exercised billing discretion and has not sought recovery for any entries that could be considered vague, duplicative, or inefficient.

Next, Ms. Rust reasonably prepared for and both she and Ms. Woodfork attended the in-person hearing. As reflected in Ms. Woodfork's Declaration, counsel exercised billing discretion and did not bill for costs related to their travel to the Courthouse.[6]

MPC's fees are reasonable and consistent with what this Court has awarded in similar situations. For example, the Court awarded $12,596.90 for a sanctions motion and associated hearing in *Nutritional Biomimetics, LLC v. Empirical Labs Inc.*, No. 16-CV-01162-KMT, 2017

---

[6] Counsel for MPC traveled to and from the courthouse from their office via Uber in order to avoid any issues with parking and to ensure timely arrival.

WL 10777667, at *4 (D. Colo. Sept. 1, 2017). Thirteen years ago, in the *McCargo* case discussed during this case's hearing, the Court awarded $6,311.00 in fees and costs associated with a motion to compel. *McCargo v. Texas Roadhouse, Inc.*, No. 09-cv-02889-WYD-KMT, 2010 WL 5129531, at *2 (D. Colo. Dec. 10, 2010). Just yesterday, the Denver District court awarded $161,666.00 in fees and costs as discovery sanctions when the plaintiff belatedly disclosed more than 630,000 documents.[7] *PCL Constr. Serv. Inc. v. Monarch Growth, Inc.*, *et al.*, Case No. 2019CV33368, Supplemental Order Re: Sanctions, Nov. 28, 2023, Ex. H.

  MPC's fees in this case are reasonably higher than many of these cases due to the significant efforts necessary to determine what evidence was missing and whether any of it could be recovered. Plaintiff was neither straightforward nor forthcoming in her written discovery responses – simply determining what had been deleted took significant time. She resisted even producing her Verizon cell phone records and only produced these after substantial conferral and on the eve of the close of discovery. Similarly, counsel would not stipulate to the date on which Plaintiff first contacted his office. Ex. G. Finally, the work on the Motion itself included a detailed analysis of Plaintiff's incomplete and misleading discovery responses.

  Thanks to counsel's detailed invoices, the Court can see the time MPC's attorneys spent on numerous attempts to obtain the text messages; the time MPC's attorneys spent communicating with opposing counsel and third parties; and the time MPC's attorneys spent on the Motion, Reply brief, and hearing. The Court can see the work product on MPC's successful

---

[7] *See also Greenway Nutrients, Inc. v. Blackburn,* No. 13-CV-01088-MSK-KMT, 2013 WL 6283719, at *1 (D. Colo. Dec. 4, 2013) (awarding $8,925.00 in fees associated with the preparation and presentation of a sanctions motion, not including fees for counsel's travel from Florida); *Powers v. Emcon Assocs., Inc.*, No. 14-cv-03006-KMT, 2017 WL 4278500, at *3 (D. Colo. Sep. 27, 2017) (awarding $8,025 for a "straightforward" motion to strike exhibits filed with a summary-judgment reply).

10

Motion, the significant discovery misconduct by Plaintiff, and it can see that the hours spent are reasonable.

### IV. MPC's HOURLY RATES ARE REASONABLE

A reasonable hourly billing rate is defined as the prevailing market rate in the relevant community for an attorney of similar experience. *Guides, Ltd. v. Yarmouth Grp. Prop. Mgmt., Inc.*, 295 F.3d 1065, 1078 (10th Cir. 2002). The Court may use its own knowledge of the prevailing market rate to determine whether the claimed rate is reasonable. *Id*. at 1079; *see also Praseuth v. Rubbermaid, Inc.*, 406 F.3d 1245, 1259 (10th Cir. 2005) (approving the district court's determination of the applicable hourly rate by "relying on its knowledge of rates for lawyers with comparable skill and experience practicing" in the relevant market). The party requesting fees bears "the burden of showing that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Ellis v. Univ. of Kan. Med. Ctr.*, 163 F.3d 1186, 1203 (10th Cir. 1998) (internal citations omitted).

The Court provided a comprehensive survey of billing rates in the Denver, Colorado area in *Pandeosingh*. 2015 WL 1476446, at *4. The cases the Court canvassed approved a range of hourly rates in the past, and MPC would submit that hourly rates have reasonably increased in the eight years since *Pandeosingh*. In this case, MPC's attorneys' standard rates are reduced – by almost 50% - according to an alternate fee arrangement. Undersigned counsel would submit that their standard fees are reasonable. And so the significantly discounted rates on this case are all the more reasonable and appropriate to the market, the case, and the timekeepers' experience and roles in the case.

11

Accordingly, the hourly rates for MPC's attorneys and paralegal are reasonable and customary. Further, opposing counsel does not challenge the reasonableness of the hourly rates at issue. MPC has self-regulated their fee request by not seeking fees that (1) could be construed as vague, duplicative, or inefficient, or (2) were not actually charged to MPC in the first instance as a client consideration. In addition, MPC has not sought fees for (1) communicating with counsel in the *Sweitzer* case, (2) for communicating with MPC, or (3) the time spent by Littler's in-house e-discovery counsel.

The resulting amount contained in this request will be actually paid by MPC to Littler Mendelson.

### V. THE COURT SHOULD AWARD MPC'S FEES INCURRED IN PREPARING THIS FEE SUBMISSION

"An award of reasonable attorneys' fees may include compensation for work performed in preparing and presenting the fee application." *Case*, 157 F.3d at 1254 (quoting and citing cases). Accordingly, the Court should include the fees for preparing this submission as part of its award.

MPC seeks fees for amounts incurred in preparing and presenting this fee submission. Indeed, it attempted to confer and avoid unnecessary briefing regarding the amount of fees incurred. Ex. A.

The additional fees total $3,262.20 (not counting time from today),[8] for a grand total of $31,325.40. A precise calculation of the fees is set forth in the Declaration of Virginia L.

---

[8] Ms. Rust's legal assistant performed significant work identifying and totaling the fees incurred by category. She did not bill for her time.

12

Woodfork attached hereto. All of the invoices issued to MPC reflect their attorneys' billing judgment and discretion.

WHEREFORE, MPC respectfully requests that this Court award them $31,325.40 in fees, subject to a reduction of no more than 10% representing the time dedicated to the issue of bad faith and request for an adverse inference and witness preclusion.

Respectfully submitted this 30th day of November, 2023

*s/ Laurie J. Rust*
LITTLER MENDELSON, P.C.
Laurie J. Rust
Virginia L. Woodfork
1900 Sixteenth Street, Suite 800
Denver, CO  80202
Telephone: (303) 629-6200
Facsimile: (303) 629-0200
Email: lrust@littler.com
          vwoodfork@littler.com

*Attorneys for Defendant*

CERTIFICATE OF SERVICE

       I hereby certify that on the 30th day of November, 2023, I electronically filed the foregoing DEFENDANT'S SUBMISSION OF ATTORNEYS' FEES with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

Spencer J. Kontnik
Matthew Fenicle
KONTNIK | COHEN, LLC
201 Steele Street, Suite 210
Denver, Colorado 80206
Telephone: (720) 449-8448
E-Mail: skontnik@kontnikcohen.com
E-Mail: mfenicle@kontnikcohen.com

*Attorneys for Plaintiff*

                                                       */s/ Valerie Gremillion*
                                                     Valerie Gremillion