IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Case No. 22-cv-02449-PAB-STV

SHANA TROYER,

      Plaintiff,

v.

MARATHON PETROLEUM COMPANY LP,

      Defendant.

_____

**ORDER**
_____

This matter is before the Court on Defendant's Motion for Summary Judgment [Docket No. 50], filed by defendant Marathon Petroleum Company LP ("MPC"). Plaintiff Shana Troyer filed a response. Docket No. 78. MPC filed a reply. Docket No. 86. The Court has jurisdiction pursuant to 28 U.S.C. § 1331.

## I.    BACKGROUND[1]

On September 3, 2019, Ms. Troyer, a woman, started working for MPC as a human resources ("HR") consultant supporting MPC's gathering and processing business unit (the "G&P unit") in the Western region. Docket No. 50 at 2, ¶¶ 1-2. In October 2020, MPC promoted Ms. Troyer to the position of HR supervisor. *Id.*, ¶ 2. As an HR supervisor, Ms. Troyer provided comprehensive HR support to employees, conducted investigations, and assisted with staffing issues in the G&P unit. *Id.*, ¶ 3. Ms. Troyer was responsible for advising employees on MPC's workplace policies,

_____

[1] The following facts are undisputed unless otherwise indicated.

including its harassment policy.  *Id*.  Ms. Troyer also supervised two HR employees,

Colleen Redfearn and Amy Kim.[2]  *Id*.; *see also* Docket No. 50-1 at 5, 112:20-23.  In

2021, Ms. Troyer started reporting directly to Jaime De La Cruz, the HR director.

Docket No. 50 at 2-3, ¶ 6.[3]  Mr. De La Cruz was responsible for evaluating Ms. Troyer's

performance and issuing any discipline to her.  *Id*.

Ms. Troyer admits that maintaining professionalism is critical to any HR role,

including her role as an HR supervisor.  *Id*. at 2, ¶ 4.  As a member of HR, Ms. Troyer

must be careful regarding her behavior.  *Id*.  Ms. Troyer admits that it is particularly

important that HR representatives follow company workplace policies and model good

behavior for other employees.  *Id*., ¶ 5.

In the spring of 2021, Ed Cimaroli, the vice president of the G&P unit, along with

Ms. Troyer and Ron Soos, planned three in-person leadership team conferences for the

G&P unit to get to know each other, build trust, and set clear expectations for working

together.  *Id*. at 3, ¶ 7; *see also* Docket No. 50-1 at 9, 142:2-10.  The conferences

occurred in Oklahoma City, Oklahoma (March 29 to March 31, 2021); Midland, Texas

(May 4 to May 6, 2021); and Denver, Colorado (June 15 to June 17, 2021).  Docket No.

---

[2] In its motion, MPC states that it "has used only last initials to refer to certain
current employees in order to protect their privacy."  Docket No. 50 at 3 n.3.  Plaintiff,
however, refers to many of these employees using their full names in her response.
*See* Docket No. 78 at 1-9.  Accordingly, the Court will use the employees' full names in
this Order.

[3] Plaintiff's response to this fact states, "Undisputed, However, *See* ASUMF
¶¶ 59-60."  Docket No. 78 at 2, ¶ 6.  To the extent that Ms. Troyer denies any portion of
this fact, Ms. Troyer provides no explanation regarding what portions of this fact she
denies.  *See* Practice Standards (Civil Cases), Chief Judge Philip A. Brimmer,
§ III.F.3.b.iv ("Any denial shall be accompanied by a brief factual explanation of the
reason(s) for the denial and a specific reference to material in the record supporting the
denial.").  Accordingly, the Court deems this fact undisputed.

50 at 3, ¶ 8.  The agenda for all three conferences was the same, with each conference

lasting a day and a half, with a mandatory team dinner on the first full day.  *Id*.  Ms.

Troyer attended all three conferences.  *Id*., ¶ 9.

After attending the meetings in Midland on May 4, 2021, Ms. Troyer went out with

individuals who she identified as the "Core Group," including Mr. Cimaroli; Mr. Soos;

Joe Sweitzer, the regional manager for maintenance; Amie Griner, a health and safety

manager; Dan Wilynzki, a safety director; Robert McHale, an environmental manager;

and Tim Price, a director.  *Id*., ¶ 10; *see also* Docket No. 1 at 7, ¶ 43.  Ms. Troyer and

other individuals in the Core Group consumed "a lot of" alcoholic drinks that night and

used "foul language."  Docket No. 50 at 4, ¶ 11.  On the morning of May 5, 2021, Ms.

Troyer presented at the conference.  *Id*., ¶ 12.  That morning, Ms. Troyer texted Ms.

Griner, "I have one thing to say to you.  Eat. A. Bag. Of. Dicks.  Holy shit I'm hurting

. . . .  I haven't been this hungover in years."  *Id*. at 10, ¶ 47.[4]

During the conference in Denver, Ms. Troyer stayed at the same hotel as the out-

of-town attendees, even though she lives locally.  *Id*. at 4, ¶ 13.  Mr. De La Cruz

approved this expense because it was a work-related event.  *Id*.  On June 15, 2021, Ms.

---

[4] Plaintiff's response to this fact states, "Undisputed.  Disputed that this is a
relevant fact because there is no evidence Defendant uncovered this text during the
investigation."  Docket No. 78 at 5, ¶ 47.  The Court's Practice Standards state that
"[l]egal argument is not permitted [in the fact section] and should be reserved for
separate portions of the briefs.  If, for example, a party believes that an established fact
is immaterial that belief should be expressed in the part of the brief devoted to legal
argument, and the fact should be admitted."  Practice Standards, (Civil Cases), Chief
Judge Philip A. Brimmer, § III.F.3.b.vii.  Accordingly, the Court deems this fact
undisputed.

Troyer texted Ms. Griner, "Apparently Rob has never heard 'suck a bag of dicks.'  He laughed until he snorted and had tears."  *Id*. at 10-11, ¶ 48.[5]

On June 16, 2021, after the second day of the Denver conference, Ms. Troyer met Ms. Griner, Mr. Sweitzer, and Mr. Wilynzki for dinner and the group went to The Roosevelt bar after dinner.  *Id*. at 4, ¶ 14.  That evening, Ms. Kim received a text message from Nate Lloyd stating that his boss, Mr. Sweitzer, and Ms. Kim's boss, Ms. Troyer, were "taking shots" at The Roosevelt bar.  *Id*., ¶ 15.  Ms. Kim and Mr. Soos then walked to The Roosevelt bar.  *Id*., ¶ 16.  When they arrived, approximately thirteen MPC employees were at the bar, and Ms. Troyer, Ms. Griner, Mr. Wilynzki, Mr. Price, and director Kevin Thompson were sitting in a large booth.  *Id*.  Ms. Troyer admits that, at The Roosevelt bar, she drank alcohol, told "off-color" jokes, used profanity, and cheered the word "pussy."  *Id*., ¶ 17.  In the evening of June 16, 2021, Mr. Soos texted Ms. Troyer, "Where y'all at," and Ms. Troyer responded, "Roosevelt by front porch.  Drunk and inappropriate.  Come."  *Id*. at 11, ¶ 49.[6]

On June 23, 2021, Ms. Kim filed a complaint with Mr. De La Cruz alleging that Ms. Troyer engaged in inappropriate and harassing behavior at the leadership conferences in Midland and Denver.  *Id*. at 4-5, ¶ 18.[7]  Mr. De La Cruz asked Jeff Steigauf, an HR compliance supervisor, to investigate the complaint against Ms. Troyer

---

[5] Plaintiff's response to this fact states, "Undisputed.  Disputed that this is a relevant fact because there is no evidence Defendant uncovered this text during the investigation."  Docket No. 78 at 5, ¶ 48.  The Court deems this fact undisputed for the same reasons discussed in footnote 4.

[6] Ms. Troyer admits that she sent this text message to Mr. Soos, but denies that "Plaintiff was referring to the fact that she was drunk or inappropriate."  Docket No. 78 at 5, ¶ 49 (citing Docket No. 78-3 at 6, 11-12, 187:6-13, 221:19-222:9).

[7] Ms. Troyer admits that Ms. Kim filed a complaint, but denies that "Ms. Kim only Complained about Plaintiff."  Docket No. 78 at 2, ¶ 18 (citing Docket No. 51).

because the HR compliance department is a separate department and Mr. De La Cruz did not want anyone from his team investigating an employee in his direct reporting line. *Id*. at 5, ¶ 19.

Ms. Kim reported to Mr. Steigauf that the following incidents occurred when she arrived at The Roosevelt bar on June 16, 2021. *Id*., ¶ 20.[8]  First, Ms. Troyer ordered Ms. Kim a double shot of tequila, but, when Ms. Kim refused to take the shot, Ms. Troyer told her to "suck my dick." *Id*.  Ms. Troyer then stood up, pointed at Ms. Kim, and told the booth that Ms. Troyer was "[her] boss." *Id*.  Ms. Troyer kept using the phrase "suck a bag of dicks." *Id*.  When Mr. Sweitzer noticed that several employees, including Mr. Cimaroli, had left the bar, Mr. Sweitzer said, "What a bunch of a vaginas." *Id*.  Ms. Troyer responded that "it's not vaginas, its pussy." *Id*.  Ms. Troyer and Ms. Griner then yelled the word "pussy" repeatedly. *Id*.  When Mr. Sweitzer made a hand gesture, Ms. Troyer said, "[y]ou must not know your way around a vagina if you think it looks like that." *Id*.  Ms. Troyer and Ms. Griner called Mr. Sweitzer "Big Dick Joe" and "Big Dick Daddy Joe." *Id*.  Ms. Kim reported to Mr. Steigauf that working relationships had been compromised due to Ms. Troyer's behavior. *Id*., ¶ 21.[9]

---

[8] Ms. Troyer admits that "Ms. Kim reported these events," but she denies that these events occurred.  Docket No. 78 at 3, ¶ 20 (citing Docket No. 79 at 2; Docket No. 51-12 at 4; Docket No. 51-13 at 4; Docket No. 79-1 at 3; Docket No. 79-2 at 3; Docket No. 51-5 at 3; Docket No. 51-6 at 2).  In its reply, MPC did not make any factual reply to plaintiff's response pursuant to this Court's Practice Standards.  *See* Practice Standards, (Civil Cases), Chief Judge Philip A. Brimmer, § III.F.3.b.vi. (noting that any reply brief should "include any factual reply which movant cares to make regarding the facts asserted in its motion to be undisputed, supported by specific references to material in the record") (emphasis omitted)).  Accordingly, the Court finds that it is undisputed that Ms. Kim reported the incidents in this paragraph to Mr. Steigauf, but it is disputed whether these incidents occurred.

[9] Plaintiff's response to this fact states, "Undisputed that Ms. Kim claimed that working relationships were compromised.  Disputed that the work relationships were

After meeting with Ms. Kim, Mr. Steigauf identified the initial scope of the investigation as whether Ms. Troyer, Mr. Sweitzer, Mr. Cimaroli, and Ms. Griner violated MPC's harassment policy or any of MPC's expectations for leaders. *Id.*, ¶ 22.  MPC's harassment policy prohibits all forms of harassment including insulting, intimidating, or discourteous conduct, derogatory jokes or comments that create an intimidating, hostile, or offensive work environment. *Id.* at 5-6, ¶ 23.  The policy provides that the "prohibition against harassment extends to work-related situations involving interactions between or among employees, vendors, contractors, and customers, which occur on or off company property or during or after regular work hours, including off-site meetings, business travel, and social events." *Id.*

Ms. Troyer's other subordinate, Ms. Redfearn, attended the Midland conference and reported to Mr. Steigauf that Ms. Troyer was "hungover" the morning that Ms. Troyer presented in Midland. *Id.* at 6, ¶ 24.[10]  Ms. Redfearn no longer wanted to be a part of Ms. Troyer's team and reported that HR has no credibility due to Ms. Troyer's behavior. *Id.*

Mr. Steigauf interviewed Ms. Troyer on June 25, 2021. *Id.*, ¶ 25.  During the interview, Mr. Steigauf requested that Ms. Troyer fully cooperate, provide truthful and complete responses, and maintain confidentiality. *Id.*  Ms. Troyer understood the significance and importance of those admonishments. *Id.*  In the interview, Ms. Troyer

---

compromised."  Docket No. 78 at 3, ¶ 21 (citing Docket No. 51-11 at 2-3; Docket No. 51-9 at 4).  Plaintiff's cited evidence does not discuss whether work relationships were compromised as a result of Ms. Troyer's actions.  *See* Docket No. 51-11 at 2-3; Docket No. 51-9 at 4.  Accordingly, the Court deems this fact undisputed.

[10] Plaintiff admits that Ms. Redfearn reported this information to Mr. Steigauf; however, plaintiff denies that she was hungover during the presentation.  Docket No. 78 at 3, ¶ 24 (citing Docket No. 78-3 at 10, 14-15, 210:1-6, 266:13-267:16).

admitted that some "off-color" jokes were made in Midland, but she largely denied engaging in inappropriate conduct. *Id*., ¶ 26. Ms. Troyer said, "I am shocked. I work in HR and I am very careful." *Id*. Ms. Troyer denied being hungover the morning she presented in Midland and denied using the phrase "suck a bag of dicks." *Id*. at 6-7, ¶ 27. As to the night in Denver at The Roosevelt bar, Ms. Troyer claimed, "I was not intoxicated. Not at all." *Id*. Ms. Troyer denied making additional comments, including "suck my dick" or "pussy," and denied discussing female anatomy or referring to Mr. Sweitzer as "Big Dick Joe." *Id*. During the interview, Ms. Troyer claimed that someone – she could not recall who – asked her if "the carpet matched the drapes," referring to the color of her pubic hair. *Id*. at 7, ¶ 28. Ms. Troyer noted that she did not think much of the comment at the time. *Id*.

Ms. Troyer understood that she could provide additional information for the investigation. *Id*., ¶ 29. Later that evening, Ms. Troyer sent Mr. Steigauf an email alleging that she and Mr. Sweitzer were being targeted by Ms. Kim because Ms. Kim was jealous that Ms. Troyer had been promoted to the HR supervisor position and that Ms. Troyer and Mr. Sweitzer had improved their relationship recently. *Id*.

Between June 24 to June 28, 2021, Mr. Steigauf interviewed fourteen witnesses, including Ms. Troyer. *Id*., ¶ 30. Several employees provided information which corroborated some of Ms. Kim's allegations regarding Ms. Troyer. *Id*., ¶ 31. For example, Mr. Thompson reported that he heard Ms. Troyer pressuring others to take shots and making comments like "C'mon, don't be pussies - drink up." *Id*., ¶ 31(a). Mr. Thompson stated that Ms. Troyer crawled over the top of the booth and seemed heavily intoxicated. *Id*. Mr. Thompson reported that he heard Ms. Troyer use the word "pussy"

a lot; call Mr. Sweitzer "Big Dick Joe" repeatedly; and tell Mr. Sweitzer that he "didn't know his way around a vagina." *Id*. Mr. Thompson left the booth because he was "embarrassed" that members of MPC's safety and support groups were making "vulgar" comments that he was uncomfortable with. *Id*.[11] Mr. Lloyd reported that he heard Ms. Troyer say the word "pussy" several times and heard her call Mr. Sweitzer "Big Dick Joe." *Id*. at 8, ¶ 31(b). Mr. Lloyd felt very uncomfortable and thought it was inappropriate for leaders to act that way. *Id*.[12] Mr. Bolton reported that he heard Ms. Troyer say "what a bunch of pussies" when employees refused to drink shots and heard Ms. Troyer call Mr. Sweitzer "Big Dick Joe." *Id*., ¶ 31(c).[13] Mr. Bolton thought the language was inappropriate. *Id*.

On July 7, 2021, Mr. Steigauf drafted a report largely substantiating the allegations against Ms. Troyer. *Id*., ¶ 32. Mr. Steigauf did not believe that Ms. Troyer was truthful in the investigation. *Id*. On July 8, 2021, Mr. De La Cruz suspended Ms. Troyer. *Id*., ¶ 33.

In response to the suspension, Ms. Troyer alleged that Mr. Soos was the person who asked her if the "carpet matched the drapes." *Id*., ¶ 34. Ms. Troyer also claimed that Ms. Kim said that she did not want to date anyone who was "fresh off the boat." *Id*.

---

[11] Plaintiff admits that Mr. Thompson reported this information, but "disputes that the events occurred." Docket No. 78 at 4, ¶ 31(a) (citing Docket No. 78 at 3, ¶ 20).

[12] Plaintiff admits that Mr. Lloyd said that he felt uncomfortable and thought it was inappropriate for leaders to act that way, but denies "that Mr. Lloyd felt uncomfortable because of Plaintiff." Docket No. 78 at 4, ¶ 31(b) (citing Docket No. 51-5 at 3-4).

[13] Plaintiff admits that Mr. Bolton reported this information, but denies that she said "what a bunch of pussies" or "Big Dick Joe." Docket No. 78 at 4, ¶ 31(c) (citing Docket No. 79 at 2; Docket No. 51-12 at 4; Docket No. 51-13 at 4; Docket No. 79-1 at 3; Docket No. 79-2 at 3; Docket No. 51-5 at 3; Docket No. 51-6 at 2).

Mr. De La Cruz informed Ms. Troyer that Mr. Steigauf would contact her to re-interview

her about the new allegations. *Id.* Mr. Steigauf re-interviewed Ms. Troyer later that

morning and then expanded the investigation to include Ms. Troyer's allegations against

Mr. Soos and Ms. Kim. *Id.*, ¶ 35. Mr. Steigauf re-interviewed Mr. Soos and Ms. Kim.

*Id.* at 8-9, ¶ 36. Mr. Steigauf did not substantiate Ms. Troyer's allegations against Mr.

Soos and Ms. Kim, and Mr. Steigauf drafted a new report with his conclusions that Mr.

Soos and Ms. Kim did not violate the harassment policy. *Id.*[14]

Based on the reports from Mr. Steigauf, Mr. De La Cruz decided on July 22, 2021

to terminate plaintiff's employment for violating MPC's harassment policy. *Id.* at 9,

¶ 37.[15] Ms. Troyer was permitted to resign in lieu of termination. *Id.*

Throughout the investigation, Mr. Steigauf provided updates to Mr. De La Cruz;

Greg Floerke, the chief operating officer; and Jonathan Jackson and Harold Rhinehart,

the vice presidents of MPC. *Id.*, ¶ 38. Mr. De La Cruz was the decision-maker for Ms.

Troyer. *Id.* Mr. Floerke and Mr. Jackson were the decision-makers for Mr. Cimaroli and

Mr. Sweitzer. *Id.* Mr. Floerke and Mr. Rhinehart were the decision-makers for Ms.

Griner. *Id.*[16] On July 28, 2021, Mr. Steigauf finalized his report (the "Final Investigation

---

[14] Plaintiff's response to this fact states, "Undisputed, However, *See* ASUMF ¶¶ 63-69." Docket No. 78 at 4, ¶ 36. To the extent that Ms. Troyer denies any portion of this fact, Ms. Troyer provides no explanation regarding what portions of this fact she denies. *See* Practice Standards (Civil Cases), Chief Judge Philip A. Brimmer, § III.F.3.b.iv. Accordingly, the Court deems this fact undisputed.

[15] Plaintiff's response to this fact states, "Undisputed, However, *See* ASUMF ¶¶ 59-60." Docket No. 78 at 4, ¶ 37. To the extent that Ms. Troyer denies any portion of this fact, Ms. Troyer provides no explanation regarding what portions of this fact she denies. *See* Practice Standards (Civil Cases), Chief Judge Philip A. Brimmer, § III.F.3.b.iv. Accordingly, the Court deems this fact undisputed.

[16] Plaintiff's response to this paragraph of facts states, "Undisputed, However, *See* ASUMF ¶¶ 57-59, 61." Docket No. 78 at 4, ¶ 38. To the extent that Ms. Troyer denies any portion of these facts, Ms. Troyer provides no explanation regarding what

Report"), which addressed some additional follow-up questions from some of the decision-makers.  *Id*. at 9-10, ¶¶ 39-40.  Mr. De La Cruz was not a decision-maker for Mr. Sweitzer, Mr. Cimaroli, or Ms. Griner because none of these individuals worked in the HR department or reported to Mr. De La Cruz.  *Id*. at 10, ¶ 44.  However, based on his role as HR director, Mr. De La Cruz made recommendations about Mr. Sweitzer, Mr. Cimaroli, and Ms. Griner to Mr. Floerke, Mr. Jackson, and Mr. Rhinehart.  *Id*.  Mr. Floerke and Mr. Jackson terminated Mr. Sweitzer's employment because Mr. Sweitzer pressured a direct report to consume alcohol and violated the harassment policy.  *Id*., ¶ 41.  Mr. Floerke and Mr. Rhinehart suspended Ms. Griner and issued her a written warning because she violated MPC's harassment policy.  *Id*., ¶ 42.  Mr. Floerke and Mr. Jackson issued Mr. Cimaroli a written reprimand because he demonstrated a lack of leadership when he failed to stop the harassing and inappropriate conduct in Midland and Denver.  *Id*., ¶ 43.

In her deposition, Ms. Troyer testified that she had no reason to challenge whether the information contained in the Final Investigation Report is what the witnesses relayed or the accuracy of the witness interview summaries.  *Id*. at 11, ¶ 50.  Ms. Troyer believes that Ms. Kim was jealous of Ms. Troyer's promotion and that Mr. Bolton had a motive to lie because Ms. Troyer and Mr. Bolton had a "contentious relationship."  *Id*., ¶ 51.  However, Ms. Troyer testified that she does not have any reason to believe that other witnesses lied.  *Id*.  Ms. Troyer testified that Mr. Steigauf appears to have followed standard HR protocols and procedures for investigations.  *Id*.,

---

portions of the facts she denies.  *See* Practice Standards (Civil Cases), Chief Judge Philip A. Brimmer, § III.F.3.b.iv.  Accordingly, the Court deems these facts undisputed.

¶ 52.  Ms. Troyer admitted that she has no evidence that Mr. Steigauf or Mr. De La Cruz had any bias against women and admitted that neither individual made any sexist comments to her.  *Id.*, ¶ 53.

Ms. Troyer asserts three claims against MPC in the complaint: (1) a discrimination claim under Title VII of the Civil Rights Act of 1964 ("Title VII"); (2) a discrimination claim under the Colorado Anti-Discrimination Act ("CADA"), Colo. Rev. Stat. § 24-34-401 *et seq.*; and (3) a claim under Colorado's Lawful Off-Duty Conduct Act, Colo. Rev. Stat. § 24-34-402.5.  Docket No. 1 at 18-22.

## II.   LEGAL STANDARD

Summary judgment is warranted under Federal Rule of Civil Procedure 56 when the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986).  A disputed fact is "material" if, under the relevant substantive law, it is essential to proper disposition of the claim. *Wright v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231-32 (10th Cir. 2001).  Only disputes over material facts can create a genuine issue for trial and preclude summary judgment. *Faustin v. City & Cnty. of Denver*, 423 F.3d 1192, 1198 (10th Cir. 2005).  An issue is "genuine" if the evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party.  *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997).

Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quotations

omitted).  "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works of Colo., Inc. v. City & Cnty. of Denver*, 36 F.3d 1513, 1518 (10th Cir. 1994).  The nonmoving party may not rest solely on the allegations in the pleadings, but instead must designate "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (quotations omitted).  "To avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case." *Bausman*, 252 F.3d at 1115.  When reviewing a motion for summary judgment, a court must view the evidence in the light most favorable to the non-moving party.  *Id.*

### III.   ANALYSIS

MPC moves for summary judgment on plaintiff's Title VII claim and the state law claim under Colo. Rev. Stat. § 24-34-402.5.  Docket No. 50 at 12-20.[17]

#### A.  **Title VII Claim**

Ms. Troyer's first claim alleges that MPC subjected her to disparate treatment based on her sex.  Docket No. 1 at 18-19, ¶¶ 118-125.  Title VII makes it unlawful for an employer to "fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  Such claims can be

---

[17] In the motion, MPC states that it requests summary judgment on "all of the claims" in plaintiff's complaint.  Docket No. 50 at 1.  However, MPC does not make any legal argument on plaintiff's CADA claim.  Accordingly, the Court declines to consider whether MPC is entitled to summary judgment on the CADA claim.

demonstrated either by "direct evidence that a workplace policy, practice, or decision relies expressly on a protected characteristic" or by "using the burden-shifting framework set forth in *McDonnell Douglas [Corp. v. Green*, 411 U.S. 792 (1973)]." *Young v. United Parcel Serv., Inc.*, 575 U.S. 206, 213 (2015).[18]  Under *McDonnell Douglas*, plaintiff must first establish a *prima facie* case of discrimination.  *Ibrahim v. All. for Sustainable Energy, LLC*, 994 F.3d 1193, 1196 (10th Cir. 2021).  If plaintiff establishes a *prima facie* case, the burden shifts to defendant "to provide a legitimate, nondiscriminatory reason" for the employment action.  *Id*.  If defendant provides a legitimate non-discriminatory reason, the burden shifts back to plaintiff to show "pretext." *Id*.

### 1. *Prima Facie Case*

To establish a *prima facie* case of disparate treatment, a plaintiff must show that (1) she "belongs to a protected class;" (2) she suffered an "adverse employment action;" and (3) the adverse employment action occurred under circumstances giving "rise to an inference of discrimination."  *Id.*; *see also Mack v. J.M. Smuckers Co*., 2023 WL 5217705, at *4 (10th Cir. Aug. 15, 2023) (citing *Luster v. Vilsack*, 667 F.3d 1089, 1095 (10th Cir. 2011)).  A plaintiff's burden at the *prima facie* stage is "not onerous."  *Bennett v. Windstream Commc'ns, Inc*., 792 F.3d 1261, 1267 (10th Cir. 2015) (quoting *Texas Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253 (1981)).

---

[18] MPC and Ms. Troyer analyze plaintiff's disparate treatment claim under the *McDonnell Douglas* framework.  *See* Docket No. 50 at 12-16; Docket No. 78 at 9-16. Because neither party argues that Ms. Troyer's first claim involves direct evidence of discrimination, the Court will evaluate the claim under the *McDonnell Douglas* framework.

Principally, MPC argues that Ms. Troyer must prove an additional element to establish her *prima facie* case, namely, that she was "satisfactorily performing her job duties." Docket No. 50 at 12. Second, MPC argues that Ms. Troyer cannot establish the third element of her *prima facie* case. *Id*. at 13-14.[19]

### a. Satisfactory Job Performance

MPC asserts that, in the *prima facie* case, a plaintiff must establish that she was "satisfactorily performing her job duties." Docket No. 50 at 12 (citing *McDonnell Douglas*, 411 U.S. at 802). MPC contends that it is undisputed that Ms. Troyer was not satisfactorily performing her job because she violated MPC's harassment policy. *Id*. In response, Ms. Troyer argues that MPC "misconstrues" the "qualified" prong of the *prima facie* analysis. Docket No. 78 at 9-10. Ms. Troyer asserts that there is no dispute that she had the requisite qualifications to serve as an HR supervisor. *Id*. at 9. Ms. Troyer contends that "Defendant's argument that Plaintiff was not qualified based on the underlying complaint and investigation is properly analyzed when evaluating Defendant's proffered non-discriminatory reasons for termination and arguments related to pretext." *Id*. at 10.

Recent published Tenth Circuit cases do not require a plaintiff to establish that she was satisfactorily performing her job as an element of the *prima facie* case for a Title VII disparate treatment claim. *See Ibrahim*, 994 F.3d at 1196 (wrongful termination claim); *Ford v. Jackson Nat'l Life Ins. Co*., 45 F.4th 1202, 1215 (10th Cir. 2022) (failure to promote claim); *Throupe v. Univ. of Denver*, 988 F.3d 1243, 1252 (10th Cir. 2021)

---

[19] MPC does not contest that Ms. Troyer is a member of a protected class or that she suffered an adverse employment action. *See* Docket No. 50 at 12-14.

(disparate treatment claim based on job assignments); *Luster*, 667 F.3d at 1095 (failure to promote claim).  Accordingly, the Court denies this portion of MPC's motion.

However, even if the *prima facie* case required a plaintiff to establish that she was satisfactorily performing her job, the Court finds that MPC's argument that Ms. Troyer was not qualified because she violated the harassment policy is more properly analyzed at the second stage of the *McDonnell Douglas* test.  The Tenth Circuit has explained that

> When an employee's failure to meet objective, employer-imposed criteria is one of the legitimate, non-discriminatory reasons advanced by an employer to dispel the inference of discrimination raised by an employee at the prima facie stage, it cannot also be used to defeat the employee's prima facie case.  To hold otherwise would be tantamount to collapsing the first and second stages of the *McDonnell Douglas* analysis and would deny a plaintiff the opportunity to demonstrate that the defendant's explanation for the adverse employment action is pretextual.

*E.E.O.C. v. Horizon/CMS Healthcare Corp.*, 220 F.3d 1184, 1193 (10th Cir. 2000). MPC's proffered legitimate, non-discriminatory reason for firing Ms. Troyer is that "she violated the Harassment Policy."  Docket No. 50 at 14-15.  Accordingly, MPC cannot utilize this reason to defeat Ms. Troyer's *prima facie* case.  *See Horizon/CMS Healthcare Corp.*, 220 F.3d at 1193.

### b.  Inference of Discrimination

In the *prima facie* stage, a plaintiff can establish an inference of discrimination in many ways, including by showing (i) "that the employer treated similarly situated employees more favorably," *E.E.O.C. v. PVNF, L.L.C.*, 487 F.3d 790, 800-01 (10th Cir. 2007); (ii) "actions or remarks made by decisionmakers that could be viewed as reflecting a discriminatory animus," *Plotke v. White*, 405 F.3d 1092, 1101 (10th Cir.

2005) (citation omitted); or (iii) "the timing or sequence of events leading to plaintiff's
termination."  *Id*.

"Individuals are considered 'similarly-situated' when they deal with the same
supervisor, are subjected to the same standards governing performance evaluation and
discipline, and have engaged in conduct of 'comparable seriousness.'"  *PVNF*, 487 F.3d
at 801 (quoting *McGowan v. City of Eufala*, 472 F.3d 736, 745 (10th Cir. 2006)); *see
also Ibrahim*, 994 F.3d at 1196 ("Employees are similarly situated when they share a
supervisor or decision-maker, must follow the same standards, and engage in
comparable conduct"); *Throupe*, 988 F.3d at 1252.  "Generally, to be similarly situated,
employees must 'deal with the same supervisor,' because '[d]ifferent supervisors will
inevitably react differently' to employee misconduct."  *Luke v. Hosp. Shared Servs., Inc.*,
513 F. App'x 763, 766 (10th Cir. 2013) (unpublished) (quoting *McGowan*, 472 F.3d at
745; *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1230 (10th Cir. 2000));
*see also Rodriguez v. Brown*, 2022 WL 3453401, at *9 n.10 (10th Cir. Aug. 18, 2022).

A "company must be allowed to exercise its judgment in determining how
severely it will discipline an employee for different types of conduct."  *Kendrick*, 220
F.3d at 1233.  However, when comparing the relative treatment of employees, "the
comparison need not be based on identical violations of identical work rules; the
violations need only be of 'comparable seriousness.'"  *Mann v. XPO Logistics Freight,
Inc.*, 819 F. App'x 585, 600 (10th Cir. 2020) (unpublished) (quoting *Kendrick*, 220 F.3d
at 1233); *Ibrahim*, 994 F.3d at 1197 (noting that "violations can be comparably serious
even if they involve different conduct or rules").  Furthermore, a "court should also
compare the relevant employment circumstances, such as work history and company

policies, applicable to the plaintiff and the intended comparable employees in determining whether they are similarly situated." *Kendrick*, 220 F.3d at 1232 (citation omitted).  Plaintiff has the "burden" of demonstrating that she "is similarly situated to the employees to whom [s]he is comparing [herself]." *Kelley v. Goodyear Tire & Rubber Co.*, 220 F.3d 1174, 1178 (10th Cir. 2000).

MPC argues that Ms. Troyer cannot establish an inference of discrimination because she has no evidence that a similarly situated male employee was treated more favorably than her.  Docket No. 50 at 13-14; *see also* Docket No. 86 at 4.  MPC argues that Mr. Soos is not similarly situated to Ms. Troyer because Mr. Soos had a different supervisor from Ms. Troyer; there is no evidence that Mr. Soos manages employees or enforces workplace policies; and there is no evidence that Mr. Soos engaged in comparable conduct as Ms. Troyer, such as yelling offensive comments, being drunk, or compromising working relationships.  Docket No. 86 at 5; Docket No. 50 at 14.  Furthermore, MPC argues that Ms. Troyer concedes that her decision-maker, Mr. De La Cruz, never made any sexist comments to her.  Docket No. 50 at 14.

Ms. Troyer responds that she has adequately established an inference of discrimination because MPC treated Mr. Soos, a similarly situated employee, more favorably than plaintiff.  Docket No. 78 at 10.  Ms. Troyer contends that Mr. Soos, a male HR employee, is similarly situated to plaintiff because they shared the same supervisor, were subject to the same standards, and engaged in comparable conduct. *Id*.  Specifically, Ms. Troyer argues that

> Like Plaintiff, Mr. De La Cruz was the individual responsible for unsubstantiating the allegation and determining that there would be no disciplinary action for Mr. Soos.  [Docket No. 78 at 4, 6, ¶¶ 37, 57-58].  Defendant utilized a "dotted line" management structure, whereby Plaintiff and Mr. Soos reported to Ms. Rollins.

17

[*Id.* at 6,] ¶ 59.  Mr. De La Cruz testified that he communicated with Ms. Rollins about Plaintiff because she was in her reporting group, and she should be involved in the decision to discharge a member of her group.  [*Id.*,] ¶ 60.  Since Mr. Soos was also in her group, Ms. Rollins was involved in discussions related to Mr. Soos during the investigation.  [*Id.*,] ¶ 61.  There is also no dispute that Mr. Soos and Plaintiff were subject to the same policies.  [*Id.*,] ¶ 62.  Defendant's differential treatment of Mr. Soos, a male, and Plaintiff is evident in the way Defendant manipulated the investigation to benefit Mr. Soos.

*Id.* at 10-11.

The Court finds that Ms. Troyer has failed to raise a genuine dispute of material fact suggesting that Mr. Soos is similarly situated to Ms. Troyer.  First, Ms. Troyer has presented no evidence that she and Mr. Soos shared the same supervisor or decision-maker.  *See PVNF*, 487 F.3d at 801.  It is undisputed that Mr. De La Cruz was Ms. Troyer's direct supervisor and the decision-maker who decided to terminate her employment.  Docket No. 50 at 2-3, 9, ¶¶ 6, 37-38.  Although Ms. Troyer claims that Mr. De La Cruz was the individual responsible for determining that "there would be no disciplinary action for Mr. Soos," *see* Docket No. 78 at 10-11 (citing Docket No. 78 at 4, 6, ¶¶ 37, 57-58), Ms. Troyer's cited statements of fact and evidence do not support this argument.[20]  Ms. Troyer presents no other evidence suggesting that Mr. De La Cruz was Mr. Soos' supervisor or decision-maker.[21]  Ms. Troyer appears to argue that Ms.

---

[20] Paragraphs 37 and 58 in Ms. Troyer's response do not reference Mr. De La Cruz.  *See* Docket No. 78 at 4, ¶ 37 ("Undisputed, However, *See* ASUMF ¶¶ 59-60.");  *see id.* at 6, ¶ 58 ("Mr. Steigauf testified that he did not determine whether Mr. Soos violated the harassment policy during his investigation.").  Paragraph 57 states that, "Mr. De La Cruz testified that he did not recommend any discipline for Mr. Soos."  *Id.*, ¶ 57 (citing Docket No. 78-2 at 30-31, 283:14-23, 290:17-20).  This evidence does not support that Mr. De La Cruz was Mr. Soos' supervisor or decision-maker.  The evidence only indicates that Mr. De La Cruz, in his capacity as the HR director, did not "recommend" any discipline for Mr. Soos.  *See* Docket No. 78-2 at 31, 290:17-20; *see also* Docket No. 50 at 10, ¶ 44.

[21] In fact, defendant's Exhibit C indicates that Mr. Soos reported to Anna Palacios-LeBlanc.  Docket No. 50-3 at 2.  Ms. Troyer does not appear to dispute the

Rollins may have been a common supervisor because MPC "utilized a 'dotted line'

management structure, whereby Plaintiff and Mr. Soos reported to Ms. Rollins."  *See id*.

at 11.  However, Ms. Troyer provides no explanation or evidence suggesting what a

"dotted line" reporting structure is.  To be similarly situated, "employees must 'deal with

the same supervisor,' because '[d]ifferent supervisors will inevitably react differently' to

employee misconduct."  *Luke*, 513 F. App'x at 766. [22]  Because Ms. Troyer has failed to

---

authenticity of Exhibit C because she cites Exhibit C in support of one of her proffered
facts.  *See* Docket No. 78 at 6, ¶ 56.  Additionally, when asked in his deposition whether
Mr. Soos reported to him, Mr. De La Cruz testified, "No."  Docket No. 50-2 at 7, 175:4-5.

[22] Ms. Troyer also appears to argue that Ms. Rollins was involved in the decision
to terminate plaintiff's employment.  *See* Docket No. 78 at 11.  Ms. Troyer asserts that
"Mr. De La Cruz testified that he communicated with Ms. Rollins about Plaintiff because
she was in her reporting group, and she should be involved in the decision to discharge
a member of her group."  *Id*. (citing Docket No. 78 at 6, ¶ 60).  However, paragraph 60
does not state that Ms. Troyer was in Ms. Rollins' "reporting group" or that Ms. Rollins
"should be involved in the decision to discharge a member of her group."  *See* Docket
No. 78 at 6, ¶ 60 ("Mr. De. La Cruz admitted he communicated with Ms. Rollins
throughout the investigation and prior to terminating Plaintiff.").  The Court's Practice
Standards state that if the party opposing the summary judgment motion

> believes that there exist additional disputed questions of fact . . ., the party shall,
> in a separate section of the party's brief styled "Statement of Additional Disputed
> Facts," set forth in simple, declarative sentences, separately numbered and
> paragraphed, each additional, material disputed fact which undercuts movant's
> claim that it is entitled to judgment as a matter of law.  Each separately
> numbered and paragraphed fact shall be accompanied by a specific reference to
> material in the record which establishes the fact or at least demonstrates that it is
> disputed.

Practice Standards (Civil Cases), Chief Judge Philip A. Brimmer, § III.F.3.b.v.
(emphasis omitted).  As the Practice Standards regarding summary judgment motions
emphasize, the "sole purpose of these procedures is to establish facts and determine
which of them are in dispute."  *Id*., § III.F.3.b.vii.  Ms. Troyer has compromised this
process by citing additional unsupported facts in her argument section that were not
included in the facts section of her brief.  Had Ms. Troyer included the proffered facts in
the proper section with specific references to material in the record, defendant would
have been required to admit or deny those facts and provide a basis for any denials,
which would assist the Court in determining what facts are undisputed and what facts

establish that she and Mr. Soos shared the same supervisor or decision-maker, she has failed to establish that Mr. Soos is a similarly situated employee.  *See Kendrick*, 220 F.3d at 1233 (holding that employees were not similarly situated, in part, because they "did not have the same immediate supervisor"); *Payan v. United Parcel Serv.*, 792 F. App'x 634, 648 (10th Cir. 2019) (unpublished) (affirming grant of summary judgment to the employer when plaintiff failed to show that the three proffered comparators shared the same decision-maker as plaintiff); *Rodriguez*, 2022 WL 3453401, at *9 ("another problem with the proffered comparators is that [plaintiff] has not shown that they share the same supervisor as [plaintiff]").

Furthermore, Ms. Troyer has failed to show that Mr. Soos engaged in conduct of "comparable seriousness."  *See PVNF*, 487 F.3d at 801.  Ms. Troyer argues that Mr. Soos engaged in comparable conduct because he asked Ms. Troyer if "the carpet match[ed] the drapes," in reference to her pubic hair and he implemented "Vegas rules" while drinking with co-workers.  Docket No. 78 at 12.  Ms. Troyer provides no explanation of what "Vegas rules" means.  The Court finds that Mr. Soos' alleged comment about Ms. Troyer's genitalia, although crude, is not comparable to the many instances of inappropriate behavior of Ms. Troyer.  It is undisputed that, during Mr. Steigauf's investigation, Ms. Troyer claimed that someone – she could not recall who – asked her if "the carpet matched the drapes," referring to the color of her pubic hair. Docket No. 50 at 7, ¶ 28.  However, Ms. Troyer told Mr. Steigauf that she did not think much of the comment at the time.  *Id.*  In response to her suspension, Ms. Troyer

---

are disputed.  As a result, the Court will not consider this argument either to establish an undisputed fact or to raise a dispute of material fact.

alleged that Mr. Soos made this comment.  *Id*. at 8, ¶ 34.  In contrast, it is undisputed that multiple employees reported to Mr. Steigauf that Ms. Troyer made repeated, sexualized comments at The Roosevelt bar, including when other employees refused to drink alcohol.  *Id*. at 4-5, 7-8, ¶¶ 18, 20, 31(a)-(c).  Multiple employees reported that Ms. Troyer's language was inappropriate or made them feel uncomfortable.  *Id*. at 4-5, 7-8, ¶¶ 18, 31(a)-(c).  Several employees also reported that working relationships had been compromised or that the HR team had no credibility due to Ms. Troyer's behavior.  *Id*. at 5-6, ¶¶ 21, 24.  Ms. Troyer presented no evidence that Mr. Soos' isolated, single comment made her, or any other employee, feel uncomfortable or that it impacted working relationships.  Therefore, the Court finds that Ms. Troyer has failed to raise a genuine dispute of material fact that she and Mr. Soos engaged in conduct of "comparable seriousness."  *See PVNF*, 487 F.3d at 801-02 (finding that other employees were not similarly situated in part because, "although there was evidence that other employees were sometimes late to work, there is no evidence that their conduct prevented them or others from completing their duties," unlike plaintiff's conduct which "was causing problems for her subordinates"); *Rodriguez*, 2022 WL 3453401, at *9 (finding that other employees were not similarly situated when those employees "committed only a single safety violation," while plaintiff committed multiple violations); *Payan*, 792 F. App'x at 648 (holding that plaintiff failed to show that another employee "engaged in conduct as egregious as his own" because "the record does not show that [the other employee] personally directed employees to alter time cards," whereas "several supervisors testified that [plaintiff] instructed them to do so").

Finally, Ms. Troyer has failed to provide any evidence suggesting that Ms. Troyer and Mr. Soos had similar employment circumstances. *See Kendrick*, 220 F.3d at 1232. It is undisputed that Ms. Troyer was an HR supervisor in the G&P unit who conducted workplace investigations, supervised two employees, and was responsible for advising employees on MPC's harassment policy. Docket No. 50 at 2-3, ¶¶ 2-3. Ms. Troyer provides some evidence indicating that Mr. Soos worked in one of MPC's HR departments. Docket No. 78 at 6, ¶ 56. However, Ms. Troyer presents no evidence that Mr. Soos supervised other employees, conducted investigations, or was responsible for advising other employees on the harassment policy. Ms. Troyer presents no evidence indicating the nature of Mr. Soos' job responsibilities or whether those responsibilities were similar to Ms. Troyer's duties. *Cf. Ibrahim*, 994 F.3d at 1198 (holding that a difference in job titles could be "immaterial" if the employees' responsibilities were similar); *see also Gerovic v. City & Cnty. of Denver*, 2023 WL 2293518, at *12 (10th Cir. Mar. 1, 2023) (holding that employee was not a proper comparator because she "was not a custodian, she worked for a different department, . . . she worked under a different supervisor," and she "had been employed for a substantially longer period of time").

Ultimately, Ms. Troyer has failed to raise a genuine dispute of material fact suggesting that Mr. Soos is similarly situated to Ms. Troyer. *See PVNF*, 487 F.3d at 801. Ms. Troyer presents no other evidence that would establish an inference of discrimination at the *prima facie* stage, such as "actions or remarks made by decisionmakers that could be viewed as reflecting a discriminatory animus," or "the timing or sequence of events leading to plaintiff's termination." *Plotke*, 405 F.3d at 1101. As a result, the Court finds that Ms. Troyer has failed to establish a *prima facie*

case of sex discrimination and MPC is entitled to summary judgment on plaintiff's Title VII claim.

### 2. Legitimate, Non-Discriminatory Reason

However, even if Ms. Troyer had raised an inference of discrimination at the *prima facie* stage, the Court finds that MPC has satisfied its burden at the second step of the *McDonnell Douglas* test.  "Once the plaintiff has established her prima facie case, the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for its actions."  *Bennett*, 792 F.3d at 1266.  The employer's burden at this stage is "exceedingly light."  *Montes v. Vail Clinic, Inc.*, 497 F.3d 1160, 1173 (10th Cir. 2007).  MPC argues that Mr. De La Cruz made the decision to terminate Ms. Troyer's employment because she violated MPC's harassment policy.  Docket No. 50 at 14-15.  Ms. Troyer does not contest that MPC has satisfied its burden at the second stage of the *McDonnell Douglas* test.  *See* Docket No. 78 at 13.

The Court finds that MPC's proffered reason satisfies its burden of production to articulate a legitimate, nondiscriminatory reason for Ms. Troyer's termination.  *See Ibrahim*, 994 F.3d at 1197 (noting that defendant's stated reason for firing plaintiff – that he made inappropriate comments to two women – was sufficient to establish a legitimate, nondiscriminatory reason for firing plaintiff); *Gerovic*, 2023 WL 2293518, at *8 (holding that a violation of the city's rules constituted a legitimate, non-discriminatory reason for the employee's termination); *Stephens v. BMAG Mgmt. Co., LLC*, 2023 WL 5538304, at *10 (W.D. Okla. Aug. 28, 2023) (collecting cases holding that "a legitimate, non-discriminatory reason for termination could be a violation of company policy").  Therefore, the Court will proceed to the third stage of the *McDonnell Douglas* test.

### 3.  Pretext

A plaintiff can withstand summary judgment if she presents evidence sufficient to raise a genuine dispute of material fact as to whether the defendant's articulated reason for the adverse employment action was pretextual.  *DePaula v. Easter Seals El Mirador*, 859 F.3d 957, 970 (10th Cir. 2017).  A plaintiff may show pretext by demonstrating that the employer's "proffered reason is factually false" or that "discrimination was a primary factor in the employer's decision."  *Id*. (citations omitted).  "Mere conjecture that the employer's explanation is pretext is insufficient to defeat summary judgment."  *Payan*, 792 F. App'x at 645 (quoting *Anderson v. Coors Brewing Co*., 181 F.3d 1171, 1179 (10th Cir. 1999)).  The relevant inquiry is not whether the employer's reasons were "wise, fair or correct," but, rather, whether the employer "honestly believed those reasons and acted in good faith upon those beliefs."  *DePaula*, 859 F.3d at 971 (quoting *Swackhammer v. Sprint/United Mgmt. Co*., 493 F.3d 1160, 1170 (10th Cir. 2007)). "Evidence that the employer should not have made the termination decision—for example, that the employer was mistaken or used poor business judgment—is not sufficient to show that the employer's explanation is unworthy of credibility."  *Id*. at 970-71 (internal quotations and citation omitted).  When assessing pretext, courts must "examine the facts as they appear *to the person making the decision*," and should not "look to the plaintiff's subjective evaluation of the situation."  *Id*. at 971 (citation omitted). A court's role is "to prevent intentional discriminatory . . . practices, not to act as a 'super personnel department,' second guessing employers' honestly held (even if erroneous) business judgments."  *Dewitt v. Sw. Bell Tel. Co*., 845 F.3d 1299, 1308 (10th Cir. 2017) (quoting *Young v. Dillon Companies, Inc*., 468 F.3d 1243, 1250 (10th Cir. 2006)).

Evidence of pretext can "take a variety of forms."  *Id*. at 1307.  For example, pretext is often established by "by revealing weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered reason, such that a reasonable fact finder could deem the employer's reason unworthy of credence."  *DePaula*, 859 F.3d at 970 (citation omitted); *see also Payan*, 792 F. App'x at 645.  A plaintiff may also establish pretext by showing that "the defendant acted contrary to a written company policy, an unwritten company policy, or a company practice when making the adverse employment decision affecting the plaintiff."  *DePaula*, 859 F.3d at 970 (internal quotations and citation omitted).  Furthermore, proof of "differential treatment of similarly-situated employees may support a finding of pretext."  *Potter v. Synerlink Corp*., 562 F. App'x 665, 675 (10th Cir. 2014) (unpublished) (quoting *Horizon/CMS Healthcare Corp*., 220 F.3d at 1199); *see also PVNF*, 487 F.3d at 802 (noting that "evidence that a similarly situated employee was treated differently may aid the plaintiff in satisfying its burden to establish a prima facie case of discrimination, or, in other circumstances, may raise an inference of pretext in the third stage of the *McDonnell Douglas* burden-shifting method of proof").  Likewise, a "failure to conduct what appeared to be a fair investigation of the violation that purportedly prompted adverse action may support an inference of pretext."  *Smothers v. Solvay Chemicals, Inc*., 740 F.3d 530, 542 (10th Cir. 2014) (internal quotations and citation omitted).

MPC argues that there is no evidence that Mr. De La Cruz's reason for terminating Ms. Troyer's employment is unworthy of belief.  Docket No. 50 at 15.  MPC asserts that it is undisputed that Mr. Steigauf interviewed fourteen employees during the investigation and multiple employees confirmed Ms. Troyer's inappropriate behavior and

indicated that her behavior undermined the HR department.  *Id.*  Ms. Troyer argues that she has established that MPC's stated reason for terminating her is pretextual for three reasons: (a) MPC treated similarly situated employees outside of Ms. Troyer's protected class more favorably; (b) MPC's investigation was insufficient; and (c) Mr. De La Cruz is not a credible witness.  Docket No. 78 at 11-16.

### a.   Similarly Situated Employees

Ms. Troyer argues that she has raised a genuine dispute of material fact on the pretext element by showing that MPC treated Mr. Soos, a similarly situated male employee, differently from Ms. Troyer.  *Id.* at 13.  For the same reasons discussed with respect to the *prima facie* stage, the Court finds that plaintiff has failed to establish that Mr. Soos is a similarly situated employee.  Furthermore, at the pretext stage, the Tenth Circuit has held that employees are not similarly situated when there is "corroborating evidence in [one] case and the absence of such evidence in [the other] case."  *Watts v. City of Norman*, 270 F.3d 1288, 1296 (10th Cir. 2001).  In *Doke v. PPG Indus., Inc.*, 118 F. App'x 366, 369-70 (10th Cir. 2004) (unpublished), the Tenth Circuit held that the plaintiff was not similarly situated to the proffered comparators because the employer had "independent evidence" of plaintiff's violation of a company policy, namely corroborating information from a customer's phone call, whereas plaintiff failed to show that the employer had any evidence aside from plaintiff's own "unsubstantiated allegations" that the proffered comparators violated company policy.  The Tenth Circuit thus found that the "[d]ifferential treatment under these circumstances is not evidence of pretext."  *Id.* at 369.  Here, it is undisputed that four employees, including Ms. Kim, Mr. Thompson, Mr. Lloyd, and Mr. Bolton, reported to MPC that Ms. Troyer made several

inappropriate, sexualized comments at The Roosevelt bar.  Docket No. 50 at 4-5, 7-8, ¶¶ 18, 20, 31(a)-(c).  It is undisputed that Ms. Troyer reported to MPC that Mr. Soos made a comment about Ms. Troyer's genitalia.  *Id.* at 8, ¶ 34.  However, Ms. Troyer has failed to show that MPC had any evidence, aside from her own allegations, that Mr. Soos made this comment.[23]  Accordingly, the Court finds that MPC's differential treatment of Ms. Troyer and Mr. Soos "under these circumstances is not evidence of pretext."  *See Doke*, 118 F. App'x at 369; *see also Watts*, 270 F.3d at 1296 (finding that the "existence of corroborating evidence in [plaintiff's] case and the absence of such evidence in [the comparator's] case is a crucial difference from the point of view of an employer trying to decide what disciplinary measures it ought to mete out to the respective employees and, for that matter, what actions it could later defend if challenged by the disciplined employee").

### b. Investigation

Mr. Troyer argues that MPC's investigation was insufficient because Mr. Steigauf did not investigate two allegations that arose during the employee interviews.  Docket No. 78 at 13-14.  First, Ms. Troyer asserts that Mr. Lloyd told Mr. Steigauf that "there was talk that if [Plaintiff] and [Ms. Greiner] would start making out [at The Roosevelt], it

---

[23] Ms. Troyer asserts that Mr. Cimaroli told Mr. Steigauf during his interview that "he heard a conversation about Plaintiff's hair."  Docket No. 78 at 7, ¶ 67 (citing Docket No. 51-9 at 2-3).  The cited exhibit states that Mr. Cimaroli "remember[ed] Amie and Shana talking about a haircut at the Mexican restaurant."  Docket No. 51-9 at 2.  Mr. Cimaroli's report therefore does not corroborate that Mr. Soos made any comment about Ms. Troyer's genitalia.  Furthermore, Ms. Troyer argues that Ms. Griner told Mr. Steigauf in her interview that someone made a comment to plaintiff asking "[d]oes the carpet match the drapes."  Docket No. 78 at 7, ¶ 68 (quoting Docket No. 51-13 at 3).  However, in her interview, Ms. Griner said, "I don't know who said it."  Docket No. 51-13 at 3.  Accordingly, Ms. Griner's interview does not show that MPC had any evidence that Mr. Soos made the comment.

would get people's attention." *Id*. Ms. Troyer argues that Mr. Steigauf did not ask Mr. Lloyd who made this statement or ask other employees any questions about this allegation. *Id*. at 14. Second, Ms. Troyer asserts that Ms. Kim's complaint alleged that Mr. Cimaroli said that "there was going to be drinking in Denver, and if Plaintiff does not want to join, he will see how long that lasts." *Id*. Ms. Troyer contends that MPC did not investigate this allegation. *Id*. Ms. Troyer states that, "[t]hrough the investigation, Defendant repeatedly demonstrated a discriminatory animus toward female employees." *Id*.

The Court finds that Ms. Troyer has failed to raise an inference of pretext based on MPC's investigation. "An employer's purported reason may . . . be undermined by evidence the company failed to adequately investigate the offense for which it purportedly fired the plaintiff." *Smothers*, 740 F.3d at 539; *see also Dewitt*, 845 F.3d at 1314. However, "an employer may ordinarily 'defeat the inference' of pretext stemming from an allegedly unfair investigation by 'simply asking an employee for his version of events.'" *Dewitt*, 845 F.3d at 1314 (quoting *E.E.O.C. v. BCI Coca–Cola Bottling Co. of L.A.*, 450 F.3d 476, 488 (10th Cir. 2006)); *see also Rutledge v. Bd. of Cnty. Commr's of Johnson Cnty., Kan.*, 2023 WL 4618335, at *8 (10th Cir. July 19, 2023). Here, it is undisputed that Mr. Steigauf interviewed Ms. Troyer twice to hear her version of the events and Ms. Troyer emailed Mr. Steigauf with follow-up information. Docket No. 50 at 6-8, ¶¶ 25, 29, 35. The fact that MPC asked Ms. Troyer for her "side of the story defeats any inference of pretext from any alleged unfairness in [the] investigation." *See Rutledge*, 2023 WL 4618335, at *8; *cf. Smothers*, 740 F.3d at 542-43 (finding that a reasonable jury could find that defendant's investigation was inadequate because the

28

decision-makers did not provide any opportunity for plaintiff to provide his "version of the encounter" or to deny the allegations).

Moreover, it is undisputed that three employees, Mr. Thompson, Mr. Lloyd, and Mr. Bolton, corroborated some of Ms. Kim's allegations regarding Ms. Troyer's behavior at The Roosevelt bar.  Docket No. 50 at 7-8, ¶¶ 31(a)-(c).  Ms. Troyer admitted in her deposition that she had no reason to challenge whether the information contained in the Final Investigation Report is what the witnesses relayed or the accuracy of the witness interview summaries.  *Id*. at 11, ¶ 50.  Ms. Troyer also testified that Mr. Steigauf appears to have followed standard HR protocols and procedures for investigations.  *Id*., ¶ 52.  Although Ms. Troyer believes that Ms. Kim and Mr. Bolton had motive to lie, Ms. Troyer testified that she does not have any reason to believe that other witnesses lied.  *Id.,* ¶ 51.  Ms. Troyer admitted that she has no evidence that Mr. Steigauf or Mr. De La Cruz has any bias against women and admitted that neither individual made any sexist comments to her.  *Id*., ¶ 53.  Therefore, Ms. Troyer has not shown that MPC did not "honestly believe" that it terminated Ms. Troyer for violating the harassment policy.  *See DePaula*, 859 F.3d at 971; *see also Hairston v. Costco Wholesale Corp*., No. 19-cv-02801-PAB-KMT, 2022 WL 910955, at *6 (D. Colo. Mar. 29, 2022) (finding that plaintiff failed to establish that defendant's reason for terminating him was pretextual when it was undisputed that other employees complained about plaintiff's behavior and plaintiff "acknowledged that defendant would have no reason to think the employees' statements were false").

Furthermore, the Tenth Circuit has also emphasized that "some flaws in an employer's investigation do not, on their own, necessarily provide a jury sufficient basis

to conclude the employer's stated reason for the adverse employment action was a pretext for discrimination."  *Markley v. U.S. Bank Nat'l Ass'n*, 59 F.4th 1072, 1082-83 (10th Cir. 2023) ("flaws in an investigation could be attributable to many factors, including a less than diligent investigator or a nondiscriminatory ulterior motivation an employer may have for terminating an employee.  Thus, without some other indicia of pretext, a jury would be left to speculate that the investigatory flaws were attributable to a discriminatory motivation").  Even if Mr. Steigauf did not follow best interviewing practices by failing to follow-up on Mr. Lloyd's and Ms. Kim's statements when conducting his investigation, "for an inference of pretext to arise on the basis of a procedural irregularity, there must be some evidence that the irregularity *directly and uniquely disadvantaged the employee*."  *See id*. at 1083 (quoting *Conroy v. Vilsack*, 707 F.3d 1163, 1176 (10th Cir. 2013)) (internal alterations omitted).  Here, Ms. Troyer has not shown how MPC's failure to investigate the two allegations "directly and uniquely disadvantaged" plaintiff.  *See id*.  Ms. Troyer does not provide any evidentiary basis to believe that further investigation into an unknown individual's alleged comment that Ms. Troyer should kiss Ms. Griner or Mr. Cimaroli's alleged comment that "there was going to be drinking in Denver, and if Plaintiff does not want to join, he will see how long that lasts," *see* Docket No. 78 at 13-14, would have produced any evidence supporting the conclusion that Ms. Troyer did not violate MPC's harassment policy.  *See Markley*, 59 F.4th at 1088 (finding that any imperfections in the investigation were insufficient to establish pretext because plaintiff failed to "provide any evidentiary basis to believe these additional [investigatory] steps would have produced valuable evidence supporting the conclusion that he had not improperly [violated company policy]").

Ms. Troyer unfounded speculation that, "[t]hrough the investigation, Defendant repeatedly demonstrated a discriminatory animus toward female employees," *see* Docket No. 78 at 14, is insufficient to establish her burden at the summary judgment stage. *See Markley*, 59 F.4th at 1083 (noting that an "employment discrimination plaintiff cannot survive summary judgment where the evidence he produces permits nothing more than a speculative basis for believing discrimination was a motivating factor"). Accordingly, the Court finds that Ms. Troyer has failed to raise a genuine dispute of material fact that MPC's investigation into Ms. Troyer supports an inference of pretext.[24]

### c.  Mr. De La Cruz's Credibility

Ms. Troyer argues that she can establish an inference of pretext because Mr. De La Cruz is not credible. Docket No. 78 at 14-16. The Tenth Circuit has recognized that a plaintiff may "raise an inference of pretext in the face of the employer's legitimate, nondiscriminatory explanation" if the plaintiff "undermine[s] the employer's credibility to the point that a reasonable jury could not find in its favor." *Jaramillo v. Colo. Jud. Dep't*, 427 F.3d 1303, 1310 (10th Cir. 2005); *see also Konzak v. Wells Fargo Bank*, *N.A.*, 492 F. App'x 906, 911 (10th Cir. 2012) (unpublished). "This exception is based on the common-sense notion that if a person is shown to be a liar in an outrageous manner . . ., the inference that the person is *non-credible*, and should not be believed as to other issues, is a reasonable one." *Jaramillo*, 427 F.3d at 1310 (internal quotations and

---

[24] Ms. Troyer also appears to argue that MPC's investigation into Mr. Soos was deficient. *See* Docket No. 78 at 11-12. However, this argument is irrelevant to the pretext analysis. *See Smothers*, 740 F.3d at 539 (explaining that flaws in employer's investigation into "*the offense for which it purportedly fired the plaintiff*" may support an inference of pretext (emphasis added)).

citation omitted); *see also Potter*, 562 F. App'x at 677 (finding that plaintiff raised a dispute of material fact regarding the pretext element because plaintiff established that her supervisor "misrepresented the nature of his notes concerning his counseling sessions" with plaintiff and destroyed the notes, which undermined "the credibility of his stated reason to fire her").  In assessing this type of pretext argument at the summary judgment stage, the court should not determine whether the witness "is credible or not," but rather should assess whether "there is a genuine issue as to pretext based on [the witness'] credibility that a jury should decide."  *Potter*, 562 F. App'x at 677 n.11.

Ms. Troyer argues that Mr. De La Cruz is not a credible witness for three reasons.  Docket No. 78 at 14-16.  First, Ms. Troyer argues that Mr. De La Cruz told the Colorado Civil Rights Division ("CCRD") that Ms. Troyer's termination was not discriminatory because MPC terminated another similarly situated employee, Mr. Sweitzer.  *Id*. at 5-6, 15, ¶ 55.  Ms. Troyer contends that, because MPC "now argues that [there] are no similarly situated employees, a jury could reasonably infer that Mr. De La Cruz is not telling the truth about the existence of other similarly situated male employees."  *Id*. at 15.  MPC responds that Ms. Troyer "offers no legal support that counsel's evolved *legal argument* somehow renders a witness not credible."  Docket No. 86 at 8.  The Court agrees with MPC that plaintiff has failed to provide any authority suggesting how counsel's evolved legal argument at the summary judgment stage could undermine Mr. De La Cruz's credibility.[25]  Accordingly, the Court rejects Ms. Troyer's first argument.

---

[25] Moreover, Ms. Troyer has the "burden" of demonstrating that she "is similarly situated to the employees to whom [s]he is comparing [herself]."  *Kelley*, 220 F.3d at 1178.  It is not MPC's burden to identify similarly situated employees for Ms. Troyer.

Second, Ms. Troyer argues that Mr. De La Cruz was not forthcoming about his role in the investigation because Mr. De La Cruz testified that "he did not conduct any part of the investigation or conduct interviews."  Docket No. 78 at 8, 15, ¶ 75 (citing Docket No. 78-2 at 17-18, 22-23, 164:12-165:3, 226:11-227:23).  Ms. Troyer asserts, however, that evidence shows that Mr. De La Cruz conducted an interview or at least spoke with Mr. Cimaroli on July 22, 2021.  *Id*. at 8, 15, ¶ 76 (citing Docket No. 79-3). MPC responds that Ms. Troyer has misconstrued Mr. De La Cruz's testimony.  Docket No. 86 at 8 & n.7.  MPC argues that Mr. De La Cruz only testified that he did not make the initial determinations about who to interview, but that he participated in follow-up interviews in his capacity as the HR director advising the other decision-makers.  *Id*. at n.7 (citing Docket No. 78-2 at 17-18, 22-23, 164:12-24, 226:11-227:23).

The following questions and answers took place during Mr. De La Cruz's deposition:

Q. Did you make any determinations about who to interview?

A.  I -- I initially, after receiving the complaint from Amy, talked with Shana, informed her that -- that this concern has come in and that I've asked Jeff to conduct the investigation.  When I -- when I talked to Jeff, I did ask him to -- and I can't recall if I asked him or he just said he was, and I was in full agreement -- but touch base with -- or not touch base with, but to talk with -- with Shana or – I'm just trying to recall, you know, how it all went down.  And I can't recall if I made that suggestion or not or if he just said, Okay, I'll call her.

Q. Okay. So outside of that initial discussion that you guys had about whether or not Jeff would call Shana, did you make any decisions about who to interview?

A. No.  I mean, Jeff – Jeff's -- it was his investigation.

Docket No. 78-2 at 17-18, 164:12-165:5.  When asked why he was involved in an interview with Mr. Cimaroli on July 21, 2021, Mr. De La Cruz responded,

So -- so, again, the investigation starts.  I'm the decision-maker with respect to Ms. Troyer.  As the investigation evolves and we're looking at folks outside of Ms. Troyer, I'm now the –I'm not the decision-maker.  I'm now HR director who's advising the decision-maker, Greg Floerke.  So my role changes a bit in this. And so the -- the discussion or the follow-up discussion with Ed [Cimaroli] has to do with – or comes about with after having discussions with Mr. Floerke.  That's Jeff having discussions with Mr. Floerke.  I'm there.  Mr. Floerke wants additional information or he wants us -- he wants more – more conversation with Ed [Cimaroli].  So that's where this comes in, this type of conversation where I'm in, again, here really as the HR director for midstream for G&P.

*Id*. at 22-23, 226:11-227:23.  The Court agrees with MPC that there is no contradiction in Mr. De La Cruz's deposition testimony.  Ms. Troyer has not provided any evidence indicating that Mr. De La Cruz was "not forthcoming about his role in the investigation." *See* Docket No. 78 at 15.  Accordingly, the Court rejects Ms. Troyer's second argument.

Third, Ms. Troyer argues that Mr. De La Cruz lied about being the only decision-maker for plaintiff's termination.  *Id*. at 15-16.  Ms. Troyer asserts that "[e]very other employee had at least two (2) decision makers."  *Id*. at 15.  Ms. Troyer argues that when Mr. De La Cruz was asked about plaintiff's termination in his deposition, he testified, "*we decided*."  *Id*. at 16.  MPC contends that Ms. Troyer's argument does not call into question Mr. De La Cruz's credibility.  Docket No. 86 at 8-9.  MPC asserts that whether other employees had two decision-makers has no bearing on Mr. De La Cruz's credibility.  *Id*.  MPC contends that Mr. De La Cruz originally misspoke in his deposition by saying "we," but immediately corrected himself.  *Id*. at 4, ¶ 78.

The Court finds that Ms. Troyer has not undermined Mr. De La Cruz's credibility to the point that "a reasonable jury could not find in [MPC's] favor."  *See Jaramillo*, 427 F.3d at 1310.  The fact that other employees had two decision-makers has no bearing on Mr. De La Cruz's credibility.  Furthermore, in his deposition, Mr. De La Cruz stated, "We decided -- or I decided to -- to suspend Shana . . . ."  Docket No. 78-2 at 21, 204:3-

4.  When asked for clarification on whether there were two decision-makers or whether he misspoke, Mr. De La Cruz stated, "No.  I mean, that's my call.  That was my decision.  So that was me misspeaking.  So my decision to suspend, my decision to terminate."  *Id.*, 204:14-16.  Ms. Troyer presents no other evidence suggesting that Ms. Rollins or any other individuals were decision-makers for plaintiff's termination.  The Court finds that MPC's non-discriminatory reason for terminating Ms. Troyer has "remained unrebutted and [Mr. De La Cruz's] credibility has not been so damaged as to render his explanations suspect."  *See Konzak*, 492 F. App'x at 911 (alterations and citation omitted).  Accordingly, Ms. Troyer has failed to raise a genuine issue as to pretext based on Mr. De La Cruz's credibility.  *See Potter*, 562 F. App'x at 677 n.11.

Ultimately, because Ms. Troyer has failed to establish that MPC's reasons for her termination were a pretext for discrimination, the Court finds that MPC is entitled to summary judgment on plaintiff's Title VII sex discrimination claim.  *See Hairston*, 2022 WL 910955, at *8 (dismissing Title VII claim on summary judgment where plaintiff failed to show pretext).  The Court accordingly grants this portion of MPC's motion and dismisses Ms. Troyer's Title VII claim with prejudice.

### B.  State Law Claims

The complaint and the final pretrial order state that the Court has subject matter jurisdiction over plaintiff's Title VII claim pursuant to 28 U.S.C. § 1331 and jurisdiction over plaintiff's state law claims pursuant to 28 U.S.C. § 1367.  Docket No. 1 at 3, ¶ 10; Docket No. 83 at 1.[26]  Although the Court may exercise supplemental jurisdiction over a

---

[26] In the pleadings and final pretrial order, neither party asserts that the Court has diversity jurisdiction over plaintiff's state law claims pursuant to 28 U.S.C. § 1332.  *See* Docket No. 1 at 3, ¶ 10; Docket No. 16 at 2, ¶ 10; Docket No. 83 at 1.  A "party invoking

state law claim if there is a jurisdictional basis for doing so, 28 U.S.C. § 1367(c)(3)
provides that a district court "may decline to exercise supplemental jurisdiction over a
claim . . . if . . . the district court has dismissed all claims over which it has original
jurisdiction."  The Tenth Circuit has instructed that, "[i]f federal claims are dismissed
before trial, leaving only issues of state law, 'the federal court should decline the
exercise of jurisdiction by dismissing the case without prejudice.'"  *Jenkins v. Currier*,
514 F.3d 1030, 1035 (10th Cir. 2008) (quoting *Bauchman for Bauchman v. W. High
Sch.*, 132 F.3d 542, 549 (10th Cir. 1997)).  This rule is consistent with "[n]otions of
comity and federalism," which "demand that a state court try its own lawsuits."  *Ball v.
Renner*, 54 F.3d 664, 669 (10th Cir. 1995).

Because the Court has dismissed Ms. Troyer's federal claim, the Court declines
to exercise supplemental jurisdiction over her state law claims, which will be dismissed
without prejudice.  *See* Colo. Rev. Stat. § 13-80-111 (permitting claims properly
commenced within the statute of limitations to be refiled if involuntarily dismissed
because of lack of jurisdiction); *Artis v. District of Columbia*, 583 U.S. 71, 75 (2018)
(holding that 28 U.S.C. § 1367(d) tolls the statute of limitations for state law claims
asserted under § 1367(a) during the pendency of the federal litigation in which such

---

diversity jurisdiction bears the burden of proving its existence by a preponderance of the
evidence."  *Middleton v. Stephenson*, 749 F.3d 1197, 1200 (10th Cir. 2014).  "A court
has no duty to conduct an independent investigation into alternative bases for its subject
matter jurisdiction."  *Markley v. U.S. Bank Nat'l Ass'n*, No. 23-cv-01422-PAB-SBP, 2024
WL 1281520, at *4 (D. Colo. Mar. 26, 2024); *see also Wilson v. Wallace*, 2023 WL
6849227, at *10 (D. Kan. Oct. 17, 2023) ("Because Plaintiff's only remaining claim
arises under state law and Plaintiff fails to plead facts required to invoke this Court's
diversity jurisdiction, the Court declines to exercise supplemental jurisdiction over
Plaintiff's negligence claim.").

claims are brought and for thirty days following involuntary dismissal of those claims on jurisdictional grounds).

### IV.     CONCLUSION

It is therefore

**ORDERED** that Defendant's Motion for Summary Judgment [Docket No. 50] is **GRANTED in part**.  It is further

**ORDERED** that plaintiff's first claim is **DISMISSED with prejudice**.  It is further

**ORDERED** that plaintiff's second and third claims are **DISMISSED without prejudice** for lack of jurisdiction.  It is further

**ORDERED** that this case is closed.

DATED July 15, 2024.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge